651 P.2d 546

**Eddie Lee DRAPEAU, Petitioner-Appellant,**

v.

**STATE of Idaho, Respondent.**

**No. 13833.**

Court of Appeals of Idaho.

Sept. 13, 1982.

Barry E. Watson, Wallace, for petitioner-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A. I. Stahman, Deputy Atty. Gen., Boise, for respondent.

WALTERS, Chief Judge.

Eddie Lee Drapeau appeals the dismissal of his application for post-conviction relief.[1] In his application, he alleged he had been denied effective assistance of counsel at trial.[2] On appeal he raises the sole issue of whether the district court erred in summarily dismissing the application without holding an evidentiary hearing.

Drapeau contended that he was denied assistance of counsel in several respects. He complains that his counsel (a) conferred with him only infrequently and did not work closely with him; (b) did not engage in pretrial discovery; (c) did not inform the jury of Drapeau's unfamiliarity with the type of handgun used in the crimes; (d) failed to locate and interview certain people who could have corroborated his defense of alibi, had they been called as witnesses at his trial; and (e) should have interviewed, prior to trial, two of Drapeau's former cellmates to whom Drapeau had given a written statement concerning the crimes, which statement was subsequently introduced in evidence during trial.

The state responded to Drapeau's application by submitting answers to written interrogatories propounded to Drapeau's trial counsel. These answers concerned counsel's activities on behalf of Drapeau. Following the state's response, the district court entered an order under I.C. § 19-4906(b), tentatively dismissing the application, but granting Drapeau twenty days to reply to the proposed dismissal. Drapeau filed a reply, accompanied by affidavits from his brother, an aunt and uncle, and their two daughters. These affidavits asserted testimony that could have been presented at trial, had Drapeau's counsel contacted certain potential witnesses.

After considering the pleadings, the transcript of the trial testimony, the affidavits and the answers to the interrogatories, the district court entered a final order denying the application. The court determined that the evidence submitted with the application did not show that Drapeau was denied the "reasonable, competent assistance" of counsel, and that Drapeau had failed to make a showing that the conduct of his counsel contributed to the conviction or to the sentences imposed. *See State v. Tucker,* 97 Idaho 4, 539 P.2d 556 (1975). Although the decision of the district court does not expressly so state, both sides on this appeal recognize that, in essence, the district judge concluded that no material issues of fact existed that would warrant further proceedings on the application. I.C. § 19-4906(b).

Relevant to disposition of this appeal is the following testimony given at Drapeau's trial. The victim of the crimes testified that Drapeau was her assailant. She testified that the crimes occurred at approximately 2:30 a. m. on the morning of January 24, 1974, near Silverton, Idaho, and that the entire incident took place within fifteen to twenty minutes.

Drapeau raised the defense of alibi. He testified that he and his wife were in Coeur d'Alene, Idaho, some forty miles from Silverton, at either his grandfather's home or his cousin's home, from 5:00 p. m. to 10:30 p. m. on the evening of January 23. He testified that he left Coeur d'Alene shortly before 11:00 p. m. and drove with his aunt

---

**1.** Drapeau was convicted, after a jury trial, of kidnapping in the second degree, assault with intent to commit the infamous crime against nature, attempt to commit the infamous crime against nature, and assault with intent to commit murder. The convictions were affirmed on appeal. *State v. Drapeau,* 97 Idaho 685, 551 P.2d 972 (1976).

**2.** In his application for post-conviction relief, Drapeau also alleged that the sentences imposed upon conviction were excessive. The claim of excessive sentence apparently was abandoned after the district court denied it as a ground for post-conviction relief. The court ruled that the sentence claim had been raised, addressed and disposed of in the direct appeal from the judgment of conviction in *State v. Drapeau, supra.* Drapeau's argument on the present appeal therefore relates solely to his contentions regarding assistance of counsel.

to the aunt's home, approximately ten miles away in Rathdrum, Idaho, arriving there at 11:00 p. m. He said he remained there until 3:00 a. m. on the morning of January 24. He related that he then returned to his grandfather's home in Coeur d'Alene where he spent the rest of the night.

During cross-examination of Drapeau at trial, the state introduced a statement given by Drapeau to two cellmates after his arrest. The statement was written by Drapeau and the cellmates. It contradicted Drapeau's alibi that he was not in the area at the time and date the offenses occurred. *See State v. Drapeau, supra* n.1, 97 Idaho at 687, 551 P.2d at 974. Drapeau testified at trial as to the circumstances under which the document was prepared.

The uncle testified at trial that when he arrived home from work shortly after midnight on the early morning of January 24, his wife (the aunt), Drapeau, and Drapeau's wife, were at the home. They conversed and visited together. He testified that at 3:00 a. m. he happened to look at a clock, noticed the time, mentioned it to the others, and told the Drapeaus that they should leave.[3]

On rebuttal—after Drapeau, his aunt, and his uncle had testified—a deputy sheriff testified that Drapeau had admitted to him that he, Drapeau had returned to Wallace, Idaho (near Silverton), between 12:30 a. m. and 1:30 a. m. on the morning of January 24, 1974.

With this background, we will address the issue raised on appeal, i.e., the allegation that Drapeau had been denied effective assistance of counsel, keeping in mind that it is improper to dispose of an application for post-conviction relief on the pleadings and the record, if there exists a material issue of fact. I.C. § 19–4906(b).

Drapeau first complains that his trial counsel (a) conferred with him only infrequently and did not work closely with him; and (b) did not engage in pretrial discovery.

In contravention of these assertions, the state presented the answers of Drapeau's trial counsel to interrogatories. Counsel stated that he conferred with Drapeau and members of Drapeau's family on numerous occasions before trial. He stated that he interviewed numerous witnesses, including members of the sheriff's office. He discussed the case with the prosecutor. He inspected the vehicle allegedly used in the crime. He interviewed other witnesses who had knowledge concerning the crime. He visited and observed the scene of the crime. He stated that the need for performance of any scientific tests was not indicated.

■ Although Drapeau was given the opportunity before final dismissal of his application, to reply by raising material issues concerning the claims of infrequency of conference and lack of pretrial discovery, he chose instead basically to attack counsel's activities regarding the interview of alibi witnesses. Bare allegations—when uncontroverted by the state—must be accepted as true. *Tramel v. State,* 92 Idaho 643, 448 P.2d 649 (1968). However, the allegations here are controverted. Bald and unsupported allegations regarding conferences with counsel and pretrial discovery, unsubstantiated by any proffered facts, are insufficient to entitle Drapeau to an evidentiary hearing on his post-conviction application. *See Pulver v. State,* 93 Idaho 687, 471 P.2d 74 (1970). Moreover, relief cannot be granted upon allegedly inadequate assistance of competent counsel where there is no evidence of prejudice resulting from the activity, or lack of activity, of counsel. *Kraft v. State,* 100 Idaho 671, 603 P.2d 1005 (1979). There has been no factual showing that he was prejudiced either by the alleged infrequency of consultation with his counsel or by counsel's activities regarding pretrial discovery. We conclude that no material issues of fact existed which would warrant an evidentiary hearing regarding frequency of conferences between Drapeau and his counsel, or the ex-

---

**3.** In their affidavits submitted in the post-conviction proceedings, the aunt and uncle, contrary to their trial testimony, now state that

Drapeau left their home at approximately 2:00 or 2:30 a. m.

tent and nature of counsel's pretrial discovery.

■ Drapeau next contends (c) that he was denied assistance of counsel by failure of his attorney to inform the jury about Drapeau's unfamiliarity with the firearm used in the crimes. The state entered a denial of that allegation, but did not offer any factual basis for controverting that contention. The trial record confirms that no information was presented to show that Drapeau was unfamiliar with the type of handgun used.

The district court held that informing the jury of Drapeau's unfamiliarity with the weapon would not have changed the verdict in the case, in view of the "overwhelming eyewitness" evidence against Drapeau. In essence the district court held that Drapeau's allegation did not create a material issue of prejudice. We agree with the district court. Contrary to Drapeau's claim, informing the jury of his unfamiliarity with handguns likely would have hurt, rather than have helped, his case. The victim identified Drapeau as her assailant. Drapeau admitted in his written statement made with his cellmates, that he held the pistol with which she was shot. The circumstances of the shooting—including one wounding shot, two misfires, and a point blank shot at the head of the victim while she was prone on the ground, eleven or twelve feet from the assailant, which final shot did not strike her where it could kill her—arguably shows a lack of familiarity by the assailant with the weapon. But for the assailant's unfamiliarity with the weapon—it could be argued—the victim would · have died. To say that the jury should have been advised of Drapeau's unfamiliarity with the weapon in light of the circumstances of the shooting and of Drapeau's alibi defense (which was not accepted by the jury) strains credulity. We conclude that the failure to inform the jury of Drapeau's alleged unfamiliarity with the weapon did not create a material issue of fact concerning effective assistance of counsel.

Drapeau next asserts (d) that his attorney did not interview and call as witnesses Drapeau's wife, the two daughters of his aunt and uncle, his grandfather, someone from the Coeur d'Alene police department, and a state highway patrolman. We will discuss each of these witnesses, and, where pertinent, the substance of their alleged testimony.

■ Drapeau represents that his wife, now deceased, would have corroborated his testimony as to his whereabouts on the evening of January 23 and the morning of January 24. In his answers to interrogatories, submitted in the proceeding below, Drapeau's trial counsel states that he *did* interview Drapeau's wife before trial. The trial record shows that she was not called as a witness. The record is unclear as to who made the decision not to call the wife as a witness, and as to the reasons for that decision. Assuming that responsibility rested with counsel—as Drapeau asserts—it is well established that failure of counsel to locate and subpoena witnesses is not, in and of itself, grounds for post-conviction relief based upon alleged ineffective assistance of counsel. *State v. Larkin,* 102 Idaho 231, 628 P.2d 1065 (1981). Decisions as to the selection of witnesses are encompassed in that aspect of trial counsel's role which has been denominated as "trial tactics" or "strategy choices". *Id.* The decision of what witnesses to call "is an area where we will not second guess counsel without evidence of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *Id.* at 234, 628 P.2d at 1068. It appears that Drapeau's trial counsel had several choices among the witnesses who could be called to testify in support of Drapeau's alibi. His answers to the interrogatories represent that he interviewed alibi witnesses. Considering the circumstance of each of those witnesses and the apparent nature of their testimony, we hold that the failure to call the wife as a witness did not constitute inadequate preparation or ineffective assistance of counsel. The selection of the aunt and uncle as witnesses to the exclusion of the wife, if that decision was made by Drapeau's trial counsel, was a matter upon which counsel should

not now be second guessed. We hold that the contention of Drapeau, that his counsel failed to call the wife as a witness, affords no basis for post-conviction relief.

Drapeau next represents that the two daughters of his aunt and uncle would have corroborated the testimony regarding his presence in their home at Rathdrum, from 11:00 p. m. to at least 1:00 a. m., when the daughters went to bed. This testimony, however, would vary from that given at trial. The aunt and uncle had testified that only one daughter, age sixteen, was present during the visit. The aunt had testified that the other younger daughter was in bed asleep. The choice of selecting the aunt and uncle as witnesses over the older daughter was, as with the wife, a matter of tactics or strategy upon which counsel will not be second guessed. *Larkin, supra.* Further, the testimony of both daughters, if admissible, either would have been merely cumulative if consistent with that given by the aunt and uncle, or would have been contradictory if given as now represented by Drapeau. Such evidence is insufficient to afford post-conviction relief. *State v. Sims,* 239 N.W.2d 550, 555 (Iowa 1976). We hold that the factual assertions raised by the affidavits of the daughters—which conflicts with testimony given at the trial—cannot be a basis for relief herein without a reasonable explanation concerning the conflict in the testimony. Drapeau has submitted no such explanation.

By way of an affidavit from his brother, Drapeau next represents that his grandfather, also now deceased, and an unidentified Coeur d'Alene policeman would have established that Drapeau attempted to climb into a window of his grandfather's house in Coeur d'Alene the morning of January 24. Drapeau further represents that he was stopped by an unidentified state highway patrolman in Rathdrum, Idaho, on the evening of January 23, who would corroborate his testimony concerning his presence on that evening. This proffered evidence is not inconsistent with the evidence presented by the state at trial. In a written statement made by Drapeau shortly after his arrest, Drapeau had stated that when he left Wallace, Idaho "[a]s I drove my car to Coeur d'Alene and then to Rathdrum I drove 90 mph after I left here. My car would only do 90 and it vibrated so I slowed to 70 mph." As noted earlier, Drapeau admitted to the police that he returned to Wallace by 1:30 a. m. on January 24. In light of the speed he was able to drive his car, it is possible that Drapeau was stopped by the state patrolman at Rathdrum the evening of January 23, committed the crime near Silverton at 2:30 a. m., and attempted to enter his grandfather's house in Coeur d'Alene in the early morning hours of January 24. Thus we do not see the absence of the testimony of the grandfather, the highway patrolman, or the Coeur d'Alene policeman as creating a material issue of fact.

Moreover, in the post-conviction proceeding no affidavits from the grandfather, the Coeur d'Alene policeman, or the state highway patrolman were offered. The representations concerning the testimony of those alleged witnesses were contained in an affidavit submitted by Drapeau's brother. These representations would not be admissible, at an evidentiary hearing, for the truth of the matters allegedly asserted by the proffered witnesses. Neither do these representations call into question any of the testimony actually presented at trial. Under these circumstances we hold that, to justify an evidentiary hearing in a post-conviction relief proceeding, it is incumbent upon the applicant to tender a factual showing based upon evidence that would be admissible at the hearing. His application must be supported by written statements from witnesses who are able to give testimony themselves as to facts within their knowledge, or must be based upon otherwise verifiable information. Absent the witnesses or verifiability of the facts to which they could testify, we hold the application fails to raise material issues of fact sufficient to justify an evidentiary hearing.

Finally, we address (e) the issue concerning the written statement prepared with the cellmates. Drapeau contends he was prejudiced by failure of his counsel to inter-

view the cellmates about the circumstances surrounding the preparation of the statement. He argues that because of the "devastating content" of the statement it was "incumbent upon and absolutely necessary" for his attorney to determine the circumstances under which the statement was made, before it was used against him in the trial.

The record before us indicates that the possible testimony of the cellmates would not be to corroborate Drapeau's alibi, but rather would be to cast doubt on the content of the written statement which contradicted the alibi. Drapeau represents that affidavits from one of the cellmates, prepared after trial, state conflicting facts as to the circumstances under which the statement concerning the crimes was made.

We make three observations concerning Drapeau's assertion. First, Drapeau himself testified as to the circumstances surrounding the preparation of the statement. *State v. Drapeau, supra* n.1, 97 Idaho at 689, 551 P.2d at 676. It thus was not a situation where failure to interview and call the cellmates as witnesses prevented the jury from understanding Drapeau's view of the circumstances surrounding the making of the statement. Second, assuming that Drapeau testified truthfully as to those circumstances, the facts stated in his cellmate's affidavits differ from Drapeau's version. Therefore, had the cellmates testified consistent with the content of the affidavits, the credibility of Drapeau's testimony concerning the circumstances under which the statement was made—and indeed all of his testimony—would also have been put in doubt before the jury. In our view, creating an issue of one's own credibility does not create a material issue of fact on which an evidentiary hearing should be conducted.

Third, the issue raised by the affidavits of the cellmates was in part determined in Drapeau's earlier appeal. In that appeal, the affidavits of the cellmates were discussed in the context of whether a new trial was warranted. Holding against the claim for new trial, the Supreme Court observed that the evidence raised by the affidavits would not have rendered a different verdict likely. The court said that "even if this allegedly newly discovered evidence was introduced at trial, we are not convinced that a different verdict would have been reached, since the evidence in favor of conviction was strong." *State v. Drapeau, supra* n.1, 97 Idaho at 692, 551 P.2d at 979.

Now, if the information presented in the affidavits would not have changed the outcome of Drapeau's trial—as concluded by our Supreme Court—can we say that his counsel's failure to discover the same information through interview of the cellmates, denied Drapeau effective assistance of counsel? We believe not. It is not sufficient by itself to show that an accused has been denied reasonably competent assistance of counsel; in addition, it must be shown that the conduct of counsel contributed to the conviction. *State v. Tucker,* 97 Idaho 4, 12, 539 P.2d 556, 564 (1975). We agree with our Supreme Court, that—in light of the strong evidence against Drapeau—the information contained in the affidavits would not have changed the verdict. We conclude the district court below properly held that Drapeau was not prejudiced by the failure of his counsel to interview the cellmates before trial.

Accordingly, the order of the district court dismissing the application for post-conviction relief, without an evidentiary hearing, is affirmed.

BURNETT and SWANSTROM, JJ., concur.