924 P.2d 622

**Anthony G. COOTZ, Petitioner–Appellant,**

v.

**STATE of Idaho, Respondent.**

No. 20321.

Court of Appeals of Idaho.

Aug. 27, 1996.

Petition for Review Denied Oct. 28, 1996.

Robert R. Chastain, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; John C. McKinney (argued), Deputy Attorney General, Boise, for respondent.

PERRY, Judge.

This appeal stems from the denial of post-conviction relief requested by Anthony G. Cootz, in relation to his 1982 conviction for robbery, aggravated battery, and possession of a firearm during the commission of these crimes. The district court summarily dismissed the application, and Cootz appeals. We affirm.

## I.

### BACKGROUND

The facts of the crimes are as follows:

On the evening of August 26, 1982, the Boisean Motel was robbed at gunpoint. Cash, including a $100 bill, was taken and the robber fled on foot. Just before the robbery, the manager of the motel observed a white sedan parked around back at a spot not normally used by the public or motel patrons. This car was gone shortly after the robbery. Gary Fost, an intern-officer candidate with the Boise Police Department, was on routine patrol in the vicinity. He observed a white sedan speed past him in the opposite direction. Fost turned around and followed, intending to cite the driver for speeding. The white sedan led Fost into a residential area where it came to a stop. The driver fled on foot. Fost gave chase. The suspect went over a fence. When Fost peered over the fence he was hit in the face by bird-shot fired from a pistol. The suspect returned to his car and drove away.

The next morning, Jim Davis, Cootz's father-in-law, contacted the authorities. He told investigators that Cootz came to the Davis residence on the evening of the robbery, appeared excited and wanted to talk to his wife, who was then living with her parents. Davis said he and his wife overheard Cootz tell their daughter he was in trouble and had shot a policeman. Cootz finally left; but not before trying to give his wife some money and giving her and Mrs. Davis guns, ammunition, clothing and makeup to hide.

State v. Cootz, 110 Idaho 807, 809, 718 P.2d 1245, 1247 (Ct.App.1986). This Court affirmed the judgments of conviction and sentences. Id. In June 1990, Cootz filed a pro se application for post-conviction relief, which was dismissed after Cootz failed to respond to the district court's notice of its intent to dismiss. The dismissal order was vacated, and counsel was appointed to represent Cootz in the post-conviction proceedings.

Cootz submitted an amended application, which was summarily dismissed on April 14, 1992. Cootz then filed a motion to reconsider, which was denied on October 1, 1992. From these 1992 orders, Cootz appealed.

Pursuant to an order of the Idaho Supreme Court temporarily suspending the appeal, Cootz was allowed to file a second amended application for post-conviction relief in the district court, which was prepared by newly appointed counsel. The state submitted a response to the application, and a summary dismissal hearing was held. On November 1, 1994, the district court issued its memorandum decision and order denying relief on the post-conviction application, except to grant credit for time served. This order reiterated all of the district court's rulings and rationales of the earlier dismissal orders in the post-conviction proceedings. Cootz's appeal, therefore, is from the order of the district court denying his second amended application for post-conviction relief without an evidentiary hearing.

## II.

### STANDARD OF REVIEW

■ An application for post-conviction relief initiates a proceeding which is civil in nature. *State v. Bearshield,* 104 Idaho 676, 678, 662 P.2d 548, 550 (1983); *Clark v. State,* 92 Idaho 827, 830, 452 P.2d 54, 57 (1969); *Murray v. State,* 121 Idaho 918, 921, 828 P.2d 1323, 1326 (Ct.App.1992). Summary dismissal of an application pursuant to Idaho Code Section 19-4906 is the procedural equivalent of summary judgment under I.R.C.P. 56. Like a plaintiff in a civil action, the applicant must prove by a preponderance of evidence the allegations upon which the request for post-conviction relief is based. I.C. § 19-4907; *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). An application for post-conviction relief differs from a complaint in an ordinary civil action, however, for an application must contain much more than "a short and plain statement of the claim" that would suffice for a complaint under I.R.C.P. 8(a)(1). Rather, an application for post-conviction relief must be verified with respect to facts within the personal knowledge of the applicant, and affida-

vits, records or other evidence supporting its allegations must be attached, or the application must state why such supporting evidence is not included with the petition. I.C. § 19-4903. In other words, the application must present or be accompanied by admissible evidence supporting its allegations, or the application will be subject to dismissal.

■ Idaho Code Section 19-4906 authorizes summary disposition of an application for post-conviction relief, either pursuant to motion of a party or upon the court's own initiative. Summary dismissal is permissible only when the applicant's evidence has raised no genuine issue of material fact which, if resolved in the applicant's favor, would entitle the applicant to the requested relief. If such a factual issue is presented, an evidentiary hearing must be conducted. *Gonzales v. State,* 120 Idaho 759, 763, 819 P.2d 1159, 1163 (Ct.App.1991); *Hoover v. State,* 114 Idaho 145, 146, 754 P.2d 458, 459 (Ct.App.1988); *Ramirez v. State,* 113 Idaho 87, 89, 741 P.2d 374, 376 (Ct.App.1987). Summary dismissal of a petition for post-conviction relief may be appropriate, however, even where the state does not controvert the applicant's evidence, because the court is not required to accept either the applicant's mere conclusory allegations, unsupported by admissible evidence, or the applicant's conclusions of law. *Roman v. State,* 125 Idaho 644, 647, 873 P.2d 898, 901 (Ct.App.1994); *Hays v. State,* 113 Idaho 736, 739, 747 P.2d 758, 761 (Ct.App.1987); *Baruth v. Gardner,* 110 Idaho 156, 159, 715 P.2d 369, 372 (Ct.App.1986).

■ On review of a dismissal of a post-conviction application without an evidentiary hearing, we will determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file; moreover, the court will liberally construe the facts and reasonable inferences in favor of the non-moving party. *Ricca v. State,* 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App.1993).

## III.

### DISCUSSION

#### A. Denial of Due Process

■ Cootz first contends that he suffered a denial of his due process rights because the

charging information in his case failed to give him proper notice that the state was seeking an enhancement for use of a firearm on both the robbery and aggravated battery charges. He argues that Count III of the information does not, under Idaho Code § 19–2520, convey fair notice of the state's intent to seek four sentences rather than one sentence for each of the three counts charged in the information. He also asserts that jury instructions 9, 10, and 25 misled him to believe that only one sentence enhancement was being sought. However, the sufficiency of the information and the correctness of the jury instructions are issues which could have been raised on direct appeal, but were not, and are, therefore, forfeited and not to be considered in post-conviction proceedings. I.C. § 19–4901. The issues should have been raised in conjunction with the claims of excessive sentence and double punishment which were before this Court in the direct appeal.

■ Also with regard to Count III of the information, Cootz argues that his counsel rendered ineffective assistance by failing to recognize the penalty enhancement issue and seek clarification as to which crime the enhancement would be applied. Cootz alleges that counsel failed to challenge the sufficiency of the pleading and, as a result, was unprepared to offer testimony from Cootz that a different gun was used in each of the two alleged crimes and that only one gun was operable.

Count I of the information charged Cootz with robbery with the use of a pistol. Count II charged Cootz with aggravated battery with the use of a deadly weapon. Count III of the information read as follows:

That the said defendant, Gerald R.A. Cootz, on or about the 26th day of August, 1980, in the County of Ada, State of Idaho, did carry and use a firearm, to wit: a pistol, during the commission of the crimes alleged in Count I and Count II.

■ Idaho Code Section 19–2520 provides for an extended sentence for the use of a firearm or deadly weapon in the commission of certain enumerated crimes, including robbery and aggravated battery. The statute does not define a separate substantive of-

fense, but is merely a sentence-enhancing statute that comes into play after a defendant is convicted of one of the enumerated offenses. *State v. Galaviz,* 104 Idaho 328, 329–30, 658 P.2d 999, 1000–01 (Ct.App.1983), *citing State v. Cardona,* 102 Idaho 668, 670, 637 P.2d 1164, 1166 (1981). Until the statute was amended in 1983, it was not necessary to allege in a separate count in the information that the defendant used a firearm. *State v. Baruth,* 107 Idaho 651, 659, 691 P.2d 1266, 1274 (Ct.App.1984). An information charging two robberies in two counts which set forth the essential facts of the crimes, including the defendant's use of a firearm in the commission of those crimes, was sufficient to invoke I.C. § 19–2520. *Id., citing Galaviz,* 104 Idaho at 330, 658 P.2d at 1001.

The district court concluded that Count III gave adequate notice to Cootz that an enhancement of the sentence would be sought upon a verdict of guilty on one or both counts. We agree that, as a matter of law, the notice met the pre–1983 pleading standards of I.C. § 19–2520 and satisfied due process concerns. In light of our conclusion that there was no error with the notice provided by Count III, we cannot find that counsel was ineffective for not requesting more specifics about the enhancement allegation in the information.

■ To the extent that Cootz claims ineffectiveness of counsel in his counsel's failure to challenge the penalty enhancement charge in Count III, Cootz must show that his attorney's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Hassett v. State,* 127 Idaho 313, 316, 900 P.2d 221, 224 (Ct.App.1995); *Russell v. State,* 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct.App.1990). To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State,* 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988); *Russell,* 118 Idaho at 67, 794 P.2d at 656. To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of

the trial would have been different. *Aragon*, 114 Idaho at 761, 760 P.2d at 1177; *Russell*, 118 Idaho at 67, 794 P.2d at 656.

Cootz argues that counsel's failure to realize that the state was seeking an enhancement for the use of a firearm in the commission of both of the crimes charged precluded the presentation of testimony about the operability of the guns in question. Cootz contends that counsel could have shown that the gun used in the robbery was inoperable and could not therefore have supported an enhancement under I.C. § 19–2520. That statute requires that the use of "any deadly weapon capable of ejecting or propelling one or more projectiles ... [including] unloaded firearms and firearms which are inoperable but which can readily be rendered operable." Cootz argues that, with his testimony about the guns, only one enhancement could have been proven.

■ To show that only one of the two guns was inoperable and could not be rendered operable, Cootz proposed that he should have been allowed to testify. However, for Cootz to testify about his knowledge of the operability of the guns used in the commission of the crimes charged would have contradicted his plea of not guilty and his claim of innocence. Such testimony at trial would necessarily have implicated Cootz in the crimes. Under the circumstances, for counsel to fail to put Cootz on the stand solely to testify that one of the two guns used in the commission of the crimes was inoperable cannot be held to be ineffective.

Finally, trial counsel, in his affidavit in support of Cootz's post-conviction application, attested that he did challenge the application of two penalty enhancements at the time of sentencing. No additional facts have been presented and, without more, we decline to hold that counsel's performance in this regard was unreasonable and altered the outcome of the case. *See Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067–68.

## B. Newly Discovered Evidence

Cootz argues that he is entitled to post-conviction relief on the grounds of newly discovered evidence. He supported the allegations in his application by an affidavit of his wife, Joy Davis, which was prepared in 1993, and also an affidavit of Dixie Davis, which was prepared in 1994. In the affidavit of Dixie Davis, she recants her trial testimony. The new evidence therefore consists of affidavits asserting the falsity of parts of the trial testimony of both Dixie Davis and Jim Davis, the parents of Joy Davis. Cootz claims these assertions raise a factual dispute as to whether there was false testimony which led to his conviction.

■ The Uniform Post–Conviction Procedure Act provides relief from a conviction where there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice. I.C. § 19–4901(a)(4). To justify an evidentiary hearing in a post-conviction relief proceeding, it is incumbent upon the applicant to tender a factual showing based upon evidence that would be admissible at the hearing. The application must be supported by written statements from witnesses who are able to give testimony themselves as to facts within their knowledge, or must be based upon otherwise verifiable information, in order to raise material issues of fact and to justify an evidentiary hearing. *Paradis v. State*, 110 Idaho 534, 716 P.2d 1306 (1986); *Drapeau v. State*, 103 Idaho 612, 651 P.2d 546 (Ct.App. 1982). Thus, we will examine the new evidence to determine whether it raises a material issue of fact, which would probably have affected the conviction or sentence, making disposition of Cootz's application for post-conviction relief without an evidentiary hearing improper. *See* I.C. § 19–4901(b); *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990).

### 1. Joy Davis's affidavit

■ Joy Davis stated in her affidavit that at the time of trial her father was trying to have her mother committed for psychiatric care and was enlisting Joy's participation in this effort. As a result, Joy alleges that Dixie Davis was being influenced by pressure from Jim Davis and by the use of psychiatric medications affecting Dixie's state of mind. Dixie's emotional and psychological state at

the time of trial, therefore, undermined her testimony and contributed to false statements at trial. Contrary to what Dixie and Jim testified to, Joy's affidavit denies that her parents overheard her conversation with Cootz in the bedroom after the crimes in this case. According to Joy, Cootz said something about a robbery, but never admitted that he had committed the robbery. Joy denied ever telling her parents that Cootz had admitted shooting a police officer to her. However, she remembered telling her parents that Cootz had "said something about a robbery and he said something like 'he just shot a cop.'" Joy contended that Jim and Dixie perjured themselves when they testified that they overheard Cootz say he shot a police officer. According to Joy's affidavit, when Cootz arrived at the house, Joy was the only one he spoke with, and he was not wearing makeup or the dark clothing described by the witnesses to the robbery. Joy claimed that Jim also lied when he testified that Cootz left a gun with the Davises that night and that Joy had hidden the gun and other items left by Cootz. However, her affidavit also acknowledges that Cootz left with Jim a bag, which the police later found to contain a makeup kit and clothing similar to that worn by the robber, and that Cootz had a gun with him when he came to the Davis residence, though she denies that he left it with the Davises. Joy claimed, in addition, that Jim told her he had lied on the witness stand.

■ The district court considered this new evidence that testimony at the trial was perjured and applied the test for obtaining a new trial based on newly discovered evidence set forth in *State v. Drapeau*, 97 Idaho 685, 551 P.2d 972 (1976).

A motion based on newly discovered evidence must disclose (1) that the evidence is newly discovered and was unknown to the defendant at the time of the trial; (2) that the evidence is material, not merely cumulative or impeaching; (3) that it will probably produce an acquittal; and (4) that failure to learn of the evidence was due to no lack of diligence on the part of the defendant.

*Id.* at 691, 551 P.2d at 978. The district court in this case concluded that parts of Jim's testimony which Joy claimed were lies dealt with material issues, such as Jim's testimony that he heard Cootz say he had shot a police officer and that he had a gun. The district court did not specifically rule on the admissibility of Jim's statement to Joy that Jim had lied during the trial. The district court did reach the conclusion that, although Joy claimed to have personal knowledge of the perjury, she had not been present at the trial and was basing her statements on a reading of the trial transcript. Joy's affidavit, the district court concluded, did not contain specific facts about the gun, the makeup or the conversation with Cootz which, if true, would entitle Cootz to relief. Further, the district court determined that the evidence contained in Joy's affidavit was impeachment evidence, going only to the credibility of Jim as a witness, rather than to the substance of the conviction.

Assuming, without deciding, that Joy's statement would be admissible at an evidentiary hearing in the post-conviction proceeding for the purpose of impeachment, the new evidence set forth in Joy's affidavit, even if deemed sufficient to impeach Jim's testimony, would not refute what this Court in Cootz's direct appeal described as overwhelming evidence of guilt.[1] *See State v.*

---

1. The record contains abundant evidence, apart from the escape evidence, which supports Cootz's conviction. His car matched the car described by witnesses. The skid marks, which disclosed that the car had both bias ply and radial tires, matched the tire stance and tire types found on Cootz's car. The robber wore a fake beard. Hair fibers which could be used in a fake beard were found at the scene of the shooting. Similar hair fibers were found in Cootz's car. The clothing Cootz left at the Davis residence was similar to the clothing worn by the robber. Makeup was also found; the robber used makeup to disguise himself. Bird shot was used to shoot the police officer; Cootz's mother-in-law gave police bird shot rounds given to her by Cootz the night of the shooting. The Davises testified to overhearing a conversation wherein Cootz implicated himself. Cootz's co-workers testified that Cootz told them of details of the crime that were not included in the newspaper. Cootz was in possession of a large roll of money, including a $100 bill, when he was arrested. *State v. Cootz*, 110 Idaho 807, 815, 718 P.2d 1245, 1253 (Ct.App.1986). Of the foregoing evi-

*McConville,* 82 Idaho 47, 51–52, 349 P.2d 114, 116–17 (1960). Accordingly, Cootz has not established that the introduction of such evidence might produce an acquittal. The district court did not err in its conclusion that the information contained in Joy's affidavit did not meet the required standard of probably producing an acquittal. *See Stuart v. State,* 118 Idaho 865, 872, 801 P.2d 1216, 1223 (1990).

### 2. Dixie Davis's affidavit

█ Dixie's affidavit cast doubt on her mental capacity as a witness at the trial due to psychological pressures and medications she was taking. She indicated that her trial testimony was the result of the manipulating influence of her then-husband, Jim, and she pointed out misrepresentations and falsehoods in her testimony which closely paralleled Jim's testimony. Dixie asserted that her trial testimony was not totally true as to the same points raised by Joy's affidavit *vis a vis* Jim's testimony. Dixie recanted the portion of her testimony where she stated that she had overheard a conversation between Joy and Cootz where Cootz admitted that he had shot a police officer and that Dixie had taken the bag and its contents and the gun from Cootz to hide them.

█ To award a new trial based upon recanted testimony, the questions that must be answered are: (1) whether the testimony given by a material witness was false; (2) whether without that testimony the jury might have reached a different conclusion; and (3) whether the party seeking the new trial was taken by surprise when the false testimony was given and was unable to meet it, or, did not know it was false until after the trial. *Bean v. State,* 119 Idaho 632, 638, 809 P.2d 493, 499 (1991) (citing with approval the *Scroggins/Larrison*[2] test for new trial based upon the recantation of testimony by a witness). In denying post-conviction relief on account of the recanted testimony, the district court determined that the affidavits were too vague to create anything but speculation that the testimony of a material witness was false in any way that would influence the outcome of the trial. The district court held that, in the absence of Dixie's trial testimony, the jury's conclusion would not have changed because of the overwhelming evidence of Cootz's guilt. Finally, the district court reasoned that Cootz could not claim surprise where Dixie had been cross-examined at trial.

In our judgment, even if the new version by the recanter (Dixie) is true, it would not undermine Cootz's conviction. There was sufficient testimony tying the physical evidence to Cootz without Cootz's admission of having committed a crime. Although Dixie's testimony further strengthened the state's case at trial, even without it, there was still sufficient evidence of Cootz's guilt that we are convinced, beyond a reasonable doubt, that the jury's finding of guilt would not change.

We agree with the district court that the essential evidence supporting the judgment of conviction was not contradicted by the affidavits submitted by Cootz. The district court correctly held that Cootz failed to make the required showing to entitle Cootz to a new trial on the basis of Dixie's recanted testimony. We have reviewed the record to determine whether a material fact existed, and we conclude that the district court did not err in dismissing Cootz's application for post-conviction relief. We affirm the denial of relief in the form of a new trial on grounds of newly discovered evidence and recanted testimony.

### C. Failure to Disclose Evidence

Cootz claims that he is entitled to post-conviction relief because the state denied his constitutional rights at trial by failing to disclose evidence in its possession that was favorable to Cootz. Cootz asserts that the state denied him exculpatory information from a witness, with whom police had spoken shortly after the robbery. Reportedly, the witness had given a description of the robber

---

dence, Joy's affidavit disputes only the testimony that the Davises heard Cootz implicate himself and the testimony that Cootz gave bird shot rounds to his mother-in-law.

2. *State v. Scroggins,* 110 Idaho 380, 716 P.2d 1152 (1985), *cert. denied,* 479 U.S. 989, 107 S.Ct. 582, 93 L.Ed.2d 585 (1986); *Larrison v. United States,* 24 F.2d 82 (7th Cir.1928).

and claimed to have spoken briefly with this person. Cootz claims that this witness could have exonerated him by testifying that he was not the person she had seen at the scene of the robbery. With regard to this exculpatory evidence, Cootz also claims that he suffered a deprivation of his rights at the hands of his defense counsel whose failure to compel discovery of this witness constituted ineffective assistance.

Any issue which could have been raised on direct appeal, but was not, is forfeited, unless it appears on the basis of a substantial factual showing that the asserted basis for relief raises a substantial doubt about the reliability of the finding of guilt. I.C. § 19–4901(b). Based on Cootz's assertion that he had only learned of this witness years after the trial and was, until then, unaware that the state had evidence in its possession substantiating that Cootz was not the robber, the district court considered his claim. The district court found that the name of the witness and a copy of her brief statement to the police had been provided by the state in response to a discovery request from Cootz's counsel. The district court, however, was unwilling to speculate as to the exculpatory nature of any testimony that this witness might have given and denied the claim for relief.

■ From our reading of the record, we conclude that Cootz was given the name of the witness and the witness's brief statement which was part of the police report. Not only do we view Cootz's interpretation of the statement [3] as being exculpatory to be mistaken, but we also conclude that no information about this witness was withheld from Cootz. Allegations are insufficient for the granting of relief when they are clearly disproved by the record or do not justify relief as a matter of law. *Cooper v. State*, 96 Idaho 542, 545, 531 P.2d 1187, 1190 (1975). Having raised no genuine issue of material fact to warrant an evidentiary hearing, Cootz is not entitled to relief on this claim.

In light of our conclusion that the state provided to Cootz all known information about this witness, we decline to find ineffective assistance in counsel's failure to compel discovery of this evidence. We uphold the district court's denial of relief premised upon the claimed non-disclosure of exculpatory evidence.

## D. Waiver of Right to Testify

Cootz's next assignment of error is the district court's failure to hold an evidentiary hearing on his post-conviction application to determine whether Cootz voluntarily waived his right to testify at trial. Cootz claims that his conviction should be overturned because he was deprived of his constitutional right to testify on his own behalf. Drawing a parallel between his case and *State v. Hoffman*, 116 Idaho 689, 778 P.2d 811 (Ct.App.1989), Cootz argues that he is entitled to an opportunity to present testimony on the issue of waiver and the facts to which he would have testified had he been allowed to exercise his right to testify. Cootz complains that his trial counsel should have advised him that his right to testify was absolute. Had he been so advised, he would have offered testimony which he believed would have helped his defense. He argues that his not testifying in his own defense was the result of ineffective assistance of counsel.

In *Hoffman*, this Court reversed the district court's finding of waiver based upon Hoffman's acquiescence in his counsel's insistence that Hoffman not testify. We concluded that there was no evidence in the record to support the district court's finding that Hoffman knew of, or that his counsel had advised him of, his ultimate right to testify. *Id.* at 692, 778 P.2d at 814.

The affidavit in Cootz's case indicates that Cootz had repeatedly told his counsel of his desire to testify on his own behalf. However, he could not say counsel had told him that he could not testify. Neither could he say

---

**3.** In her statement to police investigators, the witness:

... advised that a few minutes prior to the robbery she observed a subject matching suspect description setting [*sic*] in the shadows on a grassy area on the northside of Villa Restaurant. This is located across Chalet St. just south of the motel office. She briefly spoke to suspect, small talk and exchanged first names. Suspect stated his name to be Peter.

that counsel had told him that the decision to testify was Cootz's choice alone. Cootz stated that counsel had told him that he did not feel it wise for Cootz to get on the stand and that it was not in Cootz's best interest to testify because the state's case was extremely weak on the robbery, and Cootz's chances were better if he did not testify.

Cootz's counsel, in his affidavit, confirmed that Cootz had expressed a strong interest in testifying. He could not recall whether he had advised Cootz that the ultimate decision to testify belonged to Cootz. Counsel added, however, that Cootz did not testify as a result of counsel's advice. From this record, therefore, the district court could not ascertain that Cootz knew of his ultimate right to testify—the prerequisite to finding that Cootz had waived his right to testify.

■ As in *Hoffman*, the next step is to apply a harmless error analysis, pursuant to *State v. Darbin*, 109 Idaho 516, 708 P.2d 921 (Ct.App.1985). To determine whether a deprivation of a defendant's right to testify may be treated as harmless, the appellate court must be satisfied beyond a reasonable doubt that the error did not affect the jury's verdict. We therefore examine Cootz's prospective testimony and consider the effect it could have had on the verdict.

Cootz's affidavit indicated that he wanted to testify about his eye color, tattoos, injured toe, and his size, but he did not because he was not adequately advised that the decision whether to testify was his alone. The state responded to Cootz's application and moved the district court for dismissal on the grounds that Cootz failed to show the specific prejudices he suffered as a result of counsel's alleged inadequacies. Cootz filed a supplemental affidavit wherein he indicated that, had he been advised that he had the final decision whether to testify, his testimony would have addressed the following:

(a) The state presented evidence that Cootz tried to get Dixie Davis to take a $100 bill, which purportedly was stolen in the robbery. Cootz said he would have testified that the $100 bill came from his place of employment, *i.e.*, he had just obtained it from the bank on behalf of a client for whom he handled funds.

(b) The state introduced evidence that the robber ran from the scene and vaulted a fence. Cootz said he wanted to testify that he had suffered an injury to his toe the morning of the robbery, which would have prevented him from walking, running, vaulting a fence, or driving his car at high speed, as was indicated in the police report.

(c) The state presented evidence that the robber had dark eyes, no identification marks on his face or hands, and was of medium build. Cootz said he wanted to testify that his eyes are blue and that he has clearly visible tattoos of a teardrop at the corner of his right eye, a little man (which is partially burned and scarred) on his left hand, and a time dot on his right hand. He also would have testified that he would not describe himself as being of medium build.

(d) The state offered the clothing worn by the robber into evidence. Cootz said he wanted to testify that the clothes did not fit him.

(e) Cootz also wanted to testify "about the facts and scenario surrounding the robbery and the shooting" to show that he was not the robber.

■ Cootz's explanation of where he obtained the $100 bill would not be relevant to the jury's finding of guilt. His appearance at the trial, including the tattoo on his face, was readily seen by the jury who had been told that the robber had disguised his appearance with the use of makeup. Again, any testimony contrasting Cootz's facial characteristics and those of the robber would also have been apparent to the jury. Evidence of Cootz's toe injury had already been testified to by Jim and Dixie Davis and would not have gained additional significance coming from Cootz. Finally, the facts of the robbery as Cootz knew them to be, had Cootz presented this evidence to the jury, would only serve to convince the jury that he was guilty by virtue of his knowledge of those facts. Weighed against the evidence of guilt, we conclude

that Cootz's prospective testimony would not likely have changed the verdict.

As previously noted, to prevail on a claim of ineffective assistance of counsel, an applicant must demonstrate both that counsel's performance was deficient and that the applicant was prejudiced by the deficiency. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Relief cannot be granted upon allegedly ineffective assistance of competent counsel where there is no evidence of prejudice resulting from the activity, or lack of activity, of counsel. *Drapeau v. State,* 103 Idaho 612, 615, 651 P.2d 546, 549 (Ct.App.1982), *citing Kraft v. State,* 100 Idaho 671, 603 P.2d 1005 (1979).

There has been no factual showing that Cootz was prejudiced by the alleged failure of counsel to fully advise him of his right to testify. We necessarily conclude that no material issues of fact existed which would warrant an evidentiary hearing on that issue. The district court's denial of an evidentiary hearing is therefore affirmed.

## E. Remaining Ineffective Assistance of Counsel Claims

 Cootz further argues that the district court erred in denying him an evidentiary hearing on his remaining claims that he was denied the effective assistance of counsel at trial. He asserts that counsel was ineffective in failing to adequately prepare for trial, call any of the witnesses Cootz requested, or obtain medical records of an injury to Cootz's toe, thereby failing to put on any sort of reasonable defense. Cootz argues that summary dismissal of these claims was error.

A post-conviction application may be dismissed summarily where its allegations, even if true, would not entitle the applicant to relief. *Whitehawk v. State,* 116 Idaho 831, 780 P.2d 153 (Ct.App.1989); *Williams v. State,* 113 Idaho 685, 687, 747 P.2d 94, 96 (Ct.App.1987). To avoid summary dismissal of a post-conviction application under subsection (b) of I.C. § 19–4906, the applicant must present facts showing he or she is entitled to relief and this presentation must be made in the form of competent, admissible evidence. *Dunlap v. State,* 126 Idaho 901, 894 P.2d 134 (Ct.App.1995).

On review of a dismissal of a post-conviction application, without an evidentiary hearing, we will determine whether a genuine issue of fact exists based on the pleadings, depositions and admissions together with any affidavits on file; moreover, the court will liberally construe the facts and reasonable inferences in favor of the non-moving party. *Ricca v. State,* 124 Idaho 894, 896, 865 P.2d 985, 987 (Ct.App.1993). While this requires that the applicant's unrebutted allegations to be accepted as true, we are not required to accept the petitioner's conclusions. *Kraft v. State,* 100 Idaho 671, 603 P.2d 1005 (1979).

A post-conviction claim of ineffective assistance of counsel must sufficiently allege facts under both prongs of the *Strickland* test, *i.e.,* deficient performance and prejudice. *Roman v. State,* 125 Idaho 644, 649, 873 P.2d 898, 903 (Ct.App.1994). Bare assertions and speculation, unsupported by specific facts, do not suffice to show ineffectiveness of counsel. *Id.* To prove prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

Cootz claims that counsel failed in a number of ways to adequately prepare for trial. Cootz asserts that counsel did not call any of the witnesses Cootz had identified to testify at trial, that counsel did not conduct pre-trial interviews with the state's witnesses, that counsel did not hire an investigator, that counsel did not conduct independent tests on the tires of Cootz's car, and that counsel did not obtain medical records about the treatment of Cootz's broken toe nor did counsel seek to present expert testimony as to the limitations caused by the broken toe.

Cootz argues that counsel failed to present the testimony of any of the individuals Cootz wanted to call to testify. Assuming Cootz's allegations to be true, there is nothing in the record to indicate how these witnesses might have testified and how their testimony might have affected the outcome of the trial. An application must be supported by written statements from witnesses who are able to give testimony themselves as to facts within

their knowledge, or must be based upon otherwise verifiable information. Absent the witnesses or verifiability of the facts to which they could testify, the application will be deemed insufficient to raise material issues of fact to justify an evidentiary hearing. *Drapeau v. State,* 103 Idaho 612, 617, 651 P.2d 546, 551 (Ct.App.1982). Cootz's allegations, which were unsupported by evidence which would have been admissible at trial, failed to raise a genuine issue of material fact sufficient to warrant an evidentiary hearing.

As to Cootz's allegation that counsel should have conducted independent tests and hired an investigator, there is only speculation on Cootz's part that such tests or investigation would have led to the discovery of evidence supportive of Cootz's case. There is no indication how this information would have changed the outcome at trial. Similarly, as to Cootz's complaint that counsel failed to obtain medical treatment records on his toe injury, or expert testimony as to the limitations caused by such an injury, Cootz has not shown that such evidence exists. Although we acknowledge that trial counsel's affidavit in support of Cootz's application seems to admit that his representation may have been somehow deficient, Cootz has failed to show that he was prejudiced by the ineffectiveness he assigned to his counsel. *See Parrott v. State,* 117 Idaho 272, 275, 787 P.2d 258, 261 (1990). Accordingly, the district court's determination not to conduct an evidentiary hearing on this issue was correct.

## IV.

### CONCLUSION

In ruling on Cootz's post-conviction claims, the district court found that Cootz failed to provide facts sufficient to raise a genuine issue of material fact sufficient to warrant an evidentiary hearing. With respect to the ineffective assistance of counsel claims, the district court found that Cootz failed to make a prima facie showing that, but for counsel's deficient performance, the outcome at trial would have been different. We conclude that the district court did not commit reversible error in denying Cootz's post-conviction application without an evidentiary hearing. We affirm the denial of post-conviction relief.

LANSING and SWANSTROM, JJ., concur.