**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44521**

| | | |
|---|---|---|
| **COREY STEVEN KUBAT,** | ) | **2017 Unpublished Opinion No. 504** |
| | ) | |
| **Petitioner-Appellant,** | ) | **Filed: June 28, 2017** |
| | ) | |
| **v.** | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| **Respondent.** | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Christopher S. Nye, District Judge.

Judgment denying petition for post-conviction relief after an evidentiary hearing, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett LLP; Deborah Whipple, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John C. McKinney, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Corey Steven Kubat appeals from the district court's judgment denying his petition for post-conviction relief after an evidentiary hearing. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Kubat was on probation. Officers conducted a home check on Kubat. Kubat lived with his girlfriend and two of her grandchildren. One of the grandchildren invited the officers into the house. After the officers entered, Kubat's girlfriend came out of one of the bedrooms at the back of the house, calling out that the officers were there and shutting the door behind her. Kubat's girlfriend said her friend was in the bedroom. The friend later came out of the bedroom. The officers searched the women for weapons. The officers did not find anything and allowed the friend to leave. Kubat then came from the back of the house. One of the officers believed Kubat

1

came from the back bedroom where the women had come from. Kubat appeared nervous. The officers tried to search him for weapons. Kubat objected and tried to escape, attempting to remove an item from his pocket. The officers caught and detained Kubat.

The officers searched the bedroom where the women had come from. They found a variety of items they believed belonged to Kubat. They did not find any items that might belong to a woman. In a desk in the bedroom, the officers found drug paraphernalia, nine small bags containing methamphetamine, and a ledger the officers believed to contain records of methamphetamine sales. One of the officers later testified that the ledger contained the statement, "I, Corey S. Kubat." The officer testified that he did not know if Kubat wrote the statement in the ledger, "but it does state his name in it."

The officers arrested Kubat. One of the officers questioned Kubat. The officer later testified:

> And then I went into if he knew what was located in the house and everything, and he said he did. I believe his exact words were he's fucked. . . . He would not tell me where he got it from or who he got it from. He did inform me that he knew it was in the house. I asked him if his [girlfriend] knew anything about it. He said she did not know of him buying or selling any methamphetamine.

The State charged Kubat with possession of a controlled substance with intent to deliver and a persistent violator enhancement. At trial, Kubat's girlfriend testified she did not know he was selling methamphetamine. A jury found Kubat guilty. Kubat appealed, and this Court affirmed his conviction. *See State v. Kubat*, 158 Idaho 661, 350 P.3d 1038 (Ct. App. 2015).

Kubat filed a pro se petition for post-conviction relief and supporting affidavit. The district court appointed counsel. The court dismissed all the claims in Kubat's petition except a claim that he was denied his right to testify. The court held an evidentiary hearing on that claim.

At the evidentiary hearing, post-conviction counsel explained that the claim was based on Kubat's constitutional right to testify, not on ineffective assistance of trial counsel. Kubat testified at the hearing. Kubat testified that he could not recall trial counsel or the court informing him that the decision to testify was ultimately his to make, and if he had known this, he would have testified. Trial counsel also testified at the hearing. Trial counsel testified he had advised Kubat not to testify because of potential impeachment and perjury issues. Counsel also testified he never told Kubat that Kubat could not testify, could not recall telling Kubat that the decision to testify was ultimately Kubat's to make, and would have let Kubat testify had Kubat pressed the issue. Further, trial counsel testified that after the trial he learned from Kubat's

2

friend that Kubat fled the officers because he had a small amount of marijuana in his pocket. According to trial counsel, had counsel known this, he likely would have had Kubat testify to explain why Kubat fled.

After the hearing, the court denied relief on the claim because there was "no evidence that [Kubat] asked to testify and had his request refused or that his desire and/or attempt to testify were otherwise impeded." Kubat timely appeals.

## II.

## ANALYSIS

Kubat asserts the district court erred in denying his petition for post-conviction relief after an evidentiary hearing. In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990); *Baxter v. State*, 149 Idaho 859, 861, 243 P.3d 675, 677 (Ct. App. 2010). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Dunlap v. State*, 141 Idaho 50, 56, 106 P.3d 376, 382 (2004); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Dunlap*, 141 Idaho at 56, 106 P.3d at 382; *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Baxter*, 149 Idaho at 862, 243 P.3d at 678.

Kubat asserts he was deprived of his constitutional right to testify on his behalf.[1] Every criminal defendant has a fundamental right to testify on his or her own behalf. *Rock v. Arkansas*,

---

[1] At the evidentiary hearing, post-conviction counsel argued Kubat was asserting a constitutional claim. The district court accepted this argument and analyzed whether Kubat was deprived of his constitutional right to testify. However, as pled, Kubat's claim was based on the conduct of trial counsel. In his petition, Kubat asserted "[Trial counsel] told me I was not alloweed [sic] to take the stand in my own defense, because he feared I would purger [sic] myself." Moreover, Kubat's claim relied on information (trial counsel's conduct) not included in the record of the underlying case. We note that a claim based on trial counsel's conduct and on information not included in the record of the underlying case should be addressed as an ineffective assistance of counsel claim, not a direct constitutional claim. In *Grove v. State*, 161 Idaho 840, 851, 392 P.3d 18, 29 (Ct. App. 2017), we held that the potential remedy for post-conviction claims grounded upon the alleged failings of counsel falls within ineffective

3

483 U.S. 44, 50-51 (1987); *State v. Hoffman*, 116 Idaho 689, 690, 778 P.2d 811, 812 (Ct. App. 1989). Although not expressly stated in the federal or state constitutions, the right to testify on one's own behalf is necessarily implied from the Due Process Clauses of the Fifth and Fourteenth Amendments and from the Compulsory Process Clause of the Sixth Amendment. *Rock*, 483 U.S. at 51-52; *see also State v. Darbin*, 109 Idaho 516, 521, 708 P.2d 921, 926 (Ct. App. 1985). Although counsel may advise the defendant regarding the wisdom and propriety of testifying, the defendant personally is vested with the ultimate authority to decide whether or not to testify. *Hoffman*, 116 Idaho at 690, 778 P.2d at 812. Because the right to testify on one's own behalf in a criminal case can be waived, the first inquiry is whether the defendant knew that the ultimate decision of whether to testify was his or hers to make. *See Cootz v. State*, 129 Idaho 360, 369, 924 P.2d 622, 631 (Ct. App. 1996). If it cannot be ascertained that the defendant knew of his or her right to testify and waived that right, then the second step is to apply the harmless error analysis. *Id.* To determine whether a deprivation of a defendant's right to testify may be treated as harmless, the appellate court must be satisfied beyond a reasonable doubt that the error did not affect the jury's verdict. *Id.*

Kubat was not affirmatively prevented from testifying. Trial counsel advised Kubat not to testify because of potential impeachment and perjury issues, and Kubat agreed with or acquiesced in trial counsel's advice. However, it is not clear whether Kubat knew the decision to testify was ultimately his to make. Both Kubat and trial counsel testified that they could not recall trial counsel informing Kubat that Kubat had the ultimate authority to decide whether to testify. Further, Kubat testified he could not recall the district court informing him that the decision to testify was ultimately his to make, and the record does not suggest the court so advised him. A defendant may not be found to have waived the right to testify where there is no evidence in the record that the defendant was aware he had the ultimate authority to decide this critical issue. *Hoffman*, 116 Idaho at 692, 778 P.2d at 814. Thus, the record is inadequate to find that Kubat waived his right to testify.

---

assistance of counsel, not direct constitutional violation. We will, however, address the claim presented. Because we hold that any error was harmless, we need not address the State's claim that no constitution deprivation could have occurred because defense counsel was not a State actor.

4

However, this does not end our analysis. An infringement upon a defendant's right to testify may be treated as harmless error if the appellate court is satisfied, beyond a reasonable doubt, that the error did not affect the jury's verdict.[2] *Id.* Even assuming Kubat was deprived of his right to testify, the deprivation was harmless. The evidence against Kubat was compelling, and Kubat's attempt to flee officers; the ledger containing the statement, "I, Corey S. Kubat;" Kubat's statement showing consciousness of guilt; and Kubat's admission that his girlfriend did not know he was trafficking in methamphetamine would not have been affected by any marginal benefit his testimony may have had.[3] Thus, we are convinced, beyond a reasonable doubt, that even if Kubat had testified, the jury would have still found him guilty. Accordingly, even assuming Kubat was deprived of his right to testify at trial, such error was harmless.

### III.

### CONCLUSION

Even assuming Kubat was deprived of his right to testify, the error was harmless. We affirm the district court's judgment denying Kubat's petition for post-conviction relief after an evidentiary hearing.

Judge GUTIERREZ and Judge MELANSON **CONCUR**.

---

[2] This Court has analyzed harmless error even when the district court did not. *See Kuehl v. State*, 145 Idaho 607, 611, 181 P.3d 533, 537 (Ct. App. 2008) (analyzing harmless error when district court summarily dismissed petition for post-conviction relief); *Cootz v. State*, 129 Idaho 360, 369, 924 P.2d 622, 631 (Ct. App. 1996) (analyzing harmless error when district court summarily dismissed petition for post-conviction relief); *State v. Hoffman*, 116 Idaho 689, 692, 778 P.2d 811, 814 (Ct. App. 1989) (analyzing harmless error when district court concluded defendant waived right to testify and did not go on to analyze harmless error).

[3] Trial counsel testified that after the trial, counsel learned from Kubat's friend that Kubat fled the officers because he had a small amount of marijuana in his pocket. On appeal, Kubat asserts "he could have explained to the jury why he attempted to run" and his testimony "would have precluded the state's argument that his attempt to run was proof that he knew about the methamphetamine, [paraphernalia], and ledger in the house." First, Kubat never testified at the evidentiary hearing as to what he would have said at trial. Second, given his admissions and the other evidence, his attempted flight was much more likely due to the drug evidence in the house, even if it also related to the marijuana in his pants. Kubat also asserts "he could have told the jury about his blindness" and this testimony "would have rebutted the state's theory that the ledger was his, as he could not see well enough to use it." This is pure argument without basis in fact. Nothing suggested his eyesight would have prevented him from seeing well enough to use the ledger. In light of the compelling evidence suggesting Kubat was trafficking in methamphetamine, this supposed testimony would not have affected the jury's verdict.