708 P.2d 921

**STATE of Idaho, Plaintiff-Respondent,**

**v.**

**Floyd DARBIN aka Floyd Smart, Defendant-Appellant.**

**No. 15361.**

Court of Appeals of Idaho.

Oct. 25, 1985.

Van G. Bishop, Nampa, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., A. René Fitzpatrick, Deputy Atty. Gen., for plaintiff-respondent.

WALTERS, Chief Judge.

Floyd Darbin was charged with grand theft (receiving stolen property) and with being a persistent violator. A jury found him guilty of the theft offense, and Darbin entered an admission to the persistent violator status. The district court sentenced Darbin to an indeterminate term of nineteen years in the custody of the Board of Correction. On appeal, Darbin raises three issues: the trial court abused its discretion in refusing to grant a continuance when the state was permitted to amend the information three days before trial; he was denied effective assistance of counsel when trial counsel failed to present a defense; and the trial court abused its sentencing discretion. We affirm without deciding the issue relating to effective assistance of counsel. On that issue, we hold it should be pursued through a petition for post-conviction relief, and not on this direct appeal from Darbin's conviction.

The theft charge against Darbin arose under the following circumstances. Curtis Cox was the owner of a 1950 three-quarter ton, GMC pickup truck. The truck was a flatbed with bright red sideboards. Cox was employed as a long-haul truck driver and normally parked his pickup at his employer's place of business when leaving for long-haul trips. In October of 1982 he returned from a trip and found his pickup missing. He reported the missing vehicle to the sheriff's office, as stolen. In January 1983, he recognized his pickup being driven in Canyon County. He attempted to follow the truck. He noticed that the hood, doors, and fenders had been replaced. A sun visor also had been added to the truck.

Before the truck sped away, he was able to get the license plate number and subsequently learned it was registered to Floyd Darbin. Cox checked a number of residences listed under "Darbin" and eventually observed Darbin working on the truck at a residence later that same January. Cox returned to the residence with deputy sheriffs and determined that the truck was indeed his. During the time between his previous sighting and locating the truck at the residence, the flatbed had been removed and a pickup bed placed on the GMC. Cox and the deputies then went to another residence where Cox had previously seen a 1948 Chevrolet pickup truck. The parts used to replace the original parts on the GMC were apparently from this Chevrolet pickup. As Cox and the deputies arrived, Darbin and his brother were pulling out of the driveway in another pickup. They were stopped and Cox noticed that two front fenders and the front grill from his GMC were in the back of the departing pickup. The GMC's hood was found behind a haystack on the property. It was later learned that the red sideboards of the original flatbed had been given away by Darbin and burned as firewood by a neighbor.

I

Darbin first contends that he was prejudiced when the state was permitted to amend its information and his motion for continuance was denied. Darbin was arrested and arraigned on a charge of "GRAND THEFT BY RECEIVING STOLEN PROPERTY." The complaint of February 25, 1983, accused him of

wilfully, knowingly, intentionally, unlawfully, and feloniously take, steal, obtain or withhold another's property, to wit: a 1950 GMC pickup truck, owned by CURTIS COX, with the intent to deprive said owner or another of the aforesaid property or to appropriate the same property to said Defendant or a third person. That said Defendant committed the aforementioned theft by receiving, retaining, concealing, obtaining control over, possessing or disposing of the aforesaid stolen property knowing or having reason to

believe that the said property was stolen. That said property then and there received, retained, concealed, obtained, possessed or disposed by said Defendant was at the time of a value exceeding ONE HUNDRED FIFTY and No/100THS DOLLARS ($150.00), lawful money of the United States of America. All of which is contrary to Idaho Code Section 18–2403(4), 18–2408. . . .

After the preliminary hearing, an information was prepared on April 1, 1983, citing the charge as "GRAND THEFT BY RECEIVING STOLEN PROPERTY—FELONY Idaho Code Section 18–2408 18–2403(4)." The information was worded substantially the same as the complaint except for the value amount. The value amount was stated as *"not exceeding* ONE HUNDRED FIFTY and No/100THS DOLLARS ($150.00), lawful money of the United States of America." (Emphasis added.)

On November 15, 1983, the prosecutor moved to amend the information by deleting the word "not," thus indicating that the truck was valued at more than $150. On November 21, 1983, the prosecutor moved to supplement the amended information by retitling the offense as "GRAND THEFT BY RECEIVING OR POSSESSING STOLEN PROPERTY—FELONY Idaho Code Section 18–2408 18–2403 18–2407(1)(b)." A hearing on the motion to amend the information was held on November 25. Darbin's counsel objected to amending the information but did not present any argument. The amendment was permitted. Darbin's counsel then moved for a continuance based on the amended information but that motion was denied. Trial was held on November 28 and Darbin was found guilty by a jury.

■ A legally sufficient information is a plain, concise, and definite written statement of the essential facts constituting the offense charged. *State v. Owens,* 101 Idaho 632, 619 P.2d 787 (1980); *State v. Lenz,* 103 Idaho 632, 651 P.2d 566 (Ct.App.1982); I.C. §§ 19–1409 to –1418; I.C.R. 7(b). In the discretion of the trial court, an information may be amended after the time the

defendant pleads so long as the amendment does not prejudice the defendant's rights. I.C. § 19–1420; *State v. LaMere,* 103 Idaho 839, 655 P.2d 46 (1982); *State v. Ranstrom,* 94 Idaho 348, 487 P.2d 942 (1971). In particular, the information must be specific so the defendant may prepare a proper defense and protect himself against subsequent prosecution based on the same conduct. *State v. Gumm,* 99 Idaho 549, 585 P.2d 959 (1978); U.S. CONST. amend. VI; IDAHO CONST. art. 1, § 13. Darbin argues that his rights were prejudiced when the district court allowed the prosecutor to change the value of the stolen property and the offense citation on the information.

We begin first with the amendment of the property value. In this case, the value of the stolen truck establishes whether the theft is classified as a felony or misdemeanor. I.C. §§ 18–2407, 18–2408. The prosecutor stated that the inclusion of the word "not" in the information was a typographical error. The complaint filed at the outset of this case reflected the value of the stolen truck in excess of $150. When Darbin was arraigned, the court minutes reflect the magistrate

> read the complaint and advised the defendant of the maximum penalties. . . . The Court further advised the defendant that because he is charged with a felony, the magistrate division has no jurisdiction to accept a plea. . . . The Court determined the defendant understood the charge against him and his rights.

The defendant was represented by counsel at his preliminary hearing where the complaint indicated the value of the pickup truck was over $150. Both the findings of the preliminary hearing and the order binding Darbin over to district court reflect that the charge was grand theft. The complaint, initial information, and amended information all indicated the offense was grand theft.

■ Although the inclusion of the word "not" significantly changes the nature of the offense, Idaho Code § 19–1419 states: "No indictment is insufficient, nor can the trial, judgment, or other proceeding there-

on, be affected, by reason of any defect or imperfection in matter of form, which does not tend to the prejudice of a substantial right of the defendant upon its merits." *See also State v. Roland,* 11 Idaho 490, 83 P. 337 (1905) (the information which indicated the offense was committed at a future date held not prejudicial to defendant). It appears that Darbin was aware that the offense was a felony and amending the information did not prejudice him in preparing a defense.

 Second, Darbin asserts prejudice by allowing the offense citation of the information to be amended from "GRAND THEFT BY RECEIVING STOLEN PROPERTY—FELONY" to "GRAND THEFT BY RECEIVING OR POSSESSING STOLEN PROPERTY—FELONY." Idaho Code § 18–2401 consolidated the various species of theft into a single statutory offense. Both the factual statement and the cited statutory section of I.C. § 18–2403(4) in the original information refer to the possession of stolen property. The information states that Darbin committed the offense by "obtaining control over, *possessing* or disposing of" the truck. (Emphasis added.) "Obtains control" is defined as the taking, carrying away, or the sale, conveyance, or transfer of title to, or interest in, or *possession* of property. I.C. § 18–2402(5) (emphasis added). Receiving stolen property impliedly connotes that one is in possession of the property. The initial information adequately set out the nature of the offense charged which would enable a person of ordinary understanding to know what is intended. *State v. Lenz,* 103 Idaho at 634, 651 P.2d at 568; I.C. § 19–1409(2). If the facts constituting the offense are sufficiently stated in the information, the mere giving of an erroneous offense characterization is immaterial. *State v. Davidson,* 78 Idaho 553, 309 P.2d 211 (1957). Here, the amending information merely redefined the same offense. We find no showing of prejudice to Darbin by allowing the information to be amended three days before his trial.

## II

Darbin next contends that he was denied effective assistance of counsel at trial.[1] He argues that his trial counsel's conduct deprived him of two critical rights—the right to present a defense and the right to testify on his own behalf. As "proof" of this assertion, Darbin relies solely upon a statement made by his trial counsel to the jury. After the state had rested its case in chief, Darbin's counsel addressed the following remarks to the jury.

Ladies and gentlement of the jury, I have prepared an opening statement which I didn't make at the time the prosecutor made his. As I'm entitled to do, I'm entitled to reserve them. I have it all written out which goes through all of what the witnesses were going to say, the evidence we're going to admit, and at this time, I'm not going to make that opening statement, and I'm not going to put on a defense, and that's my decision, and I haven't even talked to Floyd about it.

But I don't believe that the state has proven one necessary element of this case, that element being that Floyd knew the pickup was stolen. They may have proven to you—they probably have proven that the pickup was stolen, but they haven't proven any—.... [Objection made.]

While Darbin characterizes this issue as one of deprivation of effective assistance of counsel, we believe his attack is misdirected. The focus should not be upon counsel's decision regarding presentation of a defense. Instead, the inquiry should be directed towards the failure of Darbin to testify in his own behalf. We shall explain why this approach should be taken.

The record shows Darbin's counsel did present a defense, although without calling any witnesses in chief. Darbin's attorney made pretrial suppression motions, participated in jury selection, lodged objections during the state's examination of witness-

---

1. Darbin's counsel on this appeal is not the same attorney who represented Darbin at trial.

es, cross-examined, and reviewed the jury instructions in her argument to the jury. In her opening statement and closing argument counsel asserted that the state had failed to demonstrate that Darbin knew the truck was stolen. It is apparent from counsel's statement to the jury that she believed the state had failed to establish, as part of a prima facie case, Darbin's knowledge that the truck was indeed stolen. During cross-examination she also endeavored to show that Darbin had not taken any actions to disguise the truck or to hide it. Darbin's counsel also stressed the need for the state to prove beyond a reasonable doubt the elements of the crime. In particular, she emphasized the jury instruction which defined the elements of the crime, and "one of those elements is that Floyd knew or should have known this pickup was stolen." Finally, she highlighted the importance of another jury instruction which dealt with the inferences which could be drawn from circumstantial evidence.[2]

With one exception, which we will next address, counsel's decision to not call witnesses as part of Darbin's defense falls within that aspect of trial counsel's role which has been denominated as "trial tactics" or "strategy choices." *Drapeau v. State*, 103 Idaho 612, 651 P.2d 546 (Ct.App. 1982). The decision of what witnesses to call "is an area where we will not second guess counsel without evidence of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation." *State v. Larkin*, 102 Idaho 231, 234, 628 P.2d 1065, 1068 (1981).

The exception, which appears to exist in this case, relates to the right of Darbin to testify in his own behalf. In *Alicea v. Gagnon*, 675 F.2d 913 (7th Cir. 1982), the Court of Appeals held that the fifth, sixth, and fourteenth amendments to the United States Constitution bestowed a constitutional right on a criminal defendant to testify in his own behalf. The Circuit Court acknowledged that although the

United States Supreme Court had never expressly found such a fundamental right, "[g]enerally speaking ... the Supreme Court seems to favor constitutional recognition of a defendant's right to testify." 675 F.2d at 920.

*Alicea* arose as a habeas corpus proceeding following Luis Alicea's conviction in a Wisconsin state court for a grocery store robbery. A Wisconsin statute required a defendant who intended to rely on a defense of alibi to serve notice of such defense on the prosecution, in advance of trial. Alicea failed to give the required notice. When he sought to testify in his defense that he was in his home and had received telephone calls at the time of the alleged robbery, the prosecution objected. The trial court sustained the prosecution's objection, ruling that Alicea could not testify on his own defense about his alibi because Alicea had failed to give the required notice of alibi to the state. The Seventh Circuit ruled that the Wisconsin statute unconstitutionally infringed on Alicea's right to testify.

In a subsequent case, the Seventh Circuit held that the decision whether a defendant should testify in his own behalf was personal to the defendant and could not be made by his counsel as a matter of trial strategy. *United States v. Curtis*, 742 F.2d 1070 (7th Cir.1984). In *Curtis* the defense counsel had refused to allow Curtis to testify on his own behalf because counsel believed Curtis intended to testify falsely.

However, the Seventh Circuit upheld the convictions in both *Alicea* and *Curtis*. In *Alicea*, applying *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, *reh'g denied*, 386 U.S. 987, 87 S.Ct. 1283, 18 L.Ed.2d 241 (1967), the Circuit Court held that—notwithstanding violation of Alicea's constitutional right to testify—the error was harmless. The court noted that the evidence against Alicea "was overwhelming" and that Alicea had "managed to in-

---

**2.** For comparison with cases where trial counsel allegedly did not "present a defense," *see, e.g.,*

*Warner v. Ford,* 752 F.2d 622 (11th Cir.1985); *Martin v. Rose,* 744 F.2d 1245 (6th Cir.1984).

troduce his alibi testimony despite the trial judge's preclusive ruling" when he was cross-examined by the state. 675 F.2d at 925. The court held:

> We are persuaded that no reasonable jury would have accepted [Alicea's] bald assertions over the strong evidence adduced by the state. Because the state's evidence was overwhelming and [Alicea] succeeded in presenting his alibi testimony in spite of the trial court's ruling, we conclude the erroneous ruling was harmless beyond a reasonable doubt.

*Id.* at 925–26. In *Curtis* the Circuit Court ruled:

> We hold that a defendant's personal constitutional right to testify truthfully in his own behalf may not be waived by counsel as a matter of trial strategy.
>
> . . . .
>
> It is equally clear, however, that a defendant has no constitutional right to testify perjuriously in his own behalf. . . . Because it seems apparent that Curtis would have testified perjuriously, counsel's refusal to put him on the witness stand cannot be said to have violated Curtis' constitutional rights.

742 F.2d at 1076 (footnote omitted).[3]

■ An apparent procedural difference arises, depending on whether the issue of the failure of a defendant to testify is viewed as a question of effective assistance of counsel or as a question of deprivation of a fundamental constitutional right to testify. If the issue is. explored under the effective counsel approach, then the burden rests with the defendant both to identify the acts or conduct of counsel that are alleged not to have been the result of reasonable professional judgment on the part of the attorney, and to show how any deficiencies in counsel's performance were prejudicial to the defense. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Whiteside*

*v. Scurr,* discussed *infra,* n. 3. *See also Carter v. State,* 108 Idaho 788, 702 P.2d 826 (1985).

■ On the other hand, if the failure of a defendant to testify is considered only in the context of deprivation of a fundamental constitutional right, and not in the context of effective assistance of counsel, then the defendant has the burden only to show he was deprived of the right to testify. The burden then shifts to the state to demonstrate that the constitutional violation was harmless error, i.e., the state must convince the reviewing court beyond a reasonable doubt that the alleged error did not contribute to the defendant's conviction. *Chapman v. California,* 386 U.S. at 24, 87 S.Ct. at 828.

We are of the opinion that in the instant case Darbin's contention that error occurred because he was not allowed to testify in his own behalf should be considered under the *Chapman* approach followed in *Alicea,* and not under the guise of denial of effective assistance of counsel. The question is not whether Darbin was deprived of effective counsel, but rather was Darbin's constitutional right to testify infringed, when *no* witnesses were called by his counsel to testify? The answer to this question depends upon facts which are not in the record before us. Counsel's statement, "I'm not going to put on a defense, and that's my decision, and I haven't even talked to Floyd about it," is not dispositive by itself. The statement does not preclude the possibility that counsel conferred with Darbin as to whether he would testify, agreed that he would not, and later decided unilaterally that no other witnesses would be called—thus resulting in "no defense." The record is devoid of any indication as to Darbin's participation in the decision that he should not testify. We simply know that he in fact did not testify.

---

3. For a contrary holding in the Eighth Circuit, under circumstances similar to *Curtis* but addressed as an issue of ineffective assistance of counsel, *see Whiteside v. Scurr,* 744 F.2d 1323, *reh'g denied,* 750 F.2d 713 (8th Cir.1984), *cert. granted, Nix v. Whiteside,* — U.S. —, 105 S.Ct.

2016, 85 L.Ed.2d 298 (1985). This case was scheduled for argument before the United States Supreme Court during its 1985–86 term, commencing October 7, 1985. *See* 54 U.S.L.W. 3161 (Sept. 24, 1985). To date we are not aware of the Supreme Court's decision in that case.

■ Although Darbin's contention involves a fundamental constitutional right, we are reluctant to rule upon that contention because the issue has been framed by an insufficient record in this direct appeal from the conviction. While we have determined that this issue is not truly one involving the effectiveness of counsel, we believe that any further development of the issue should be pursued on a petition for post-conviction relief, as is suggested by certain decisions of the Idaho appellate courts in dealing similarly with ineffective counsel claims. *See Carter v. State,* 108 Idaho 788, 702 P.2d 826 (1985); *State v. Carter,* 103 Idaho 917, 923 n. 4, 655 P.2d 434, 440 n. 4 (1982); *State v. Blackburn,* 99 Idaho 222, 579 P.2d 1205 (1978); *State v. Kraft,* 99 Idaho 214, 579 P.2d 1197 (1978).

For example, in *State v. Carter,* 103 Idaho at 923, 655 P.2d at 440, the defendant raised several alleged instances of deprivation of effective assistance of counsel, on direct appeal from his conviction. Our Supreme Court determined that the instances complained of fell within the area of strategies and tactical choices of counsel. The Court noted that:

> The record in this proceeding is devoid of any indication that such choices were a result of inadequate preparation or ignorance of counsel. Absent such evidence, it must be presumed that defense counsel's actions were not due to inadequate preparation or ignorance, and that defendant's representation by counsel was competently carried out.

*Id.* The Court added a footnote to the foregoing. The Court said:

> If evidence to the contrary is available outside the record, it may be presented only by way of a petition for post conviction relief pursuant to I.C. § 19–4901 et seq. [Citations omitted.]

Subsequently, Carter filed a petition for post-conviction relief alleging, essentially, the same ineffective assistance of trial counsel that had been asserted on his direct appeal from his conviction. The post-conviction petition was denied and Carter appealed. On that appeal the state contended Carter's issue of effective assistance of counsel was res judicata as having been raised on the earlier direct appeal. Responding to the state's contention, our Supreme Court said:

> In disposing of Carter's ineffective assistance claim on direct appeal, we simply stated that the alleged deficiencies fell into the area of strategic and tactical choices and that the record was "devoid of any indication that such choices were a result of inadequate preparation or ignorance of counsel." *Id.* "Absent such evidence," we held "it must be presumed that defense counsel's actions were not due to inadequate preparation or ignorance, and that defendant's representation by counsel was competently carried out." *Id.* However, and of crucial importance to the present proceeding, we went on to state that, "If evidence to the contrary is available outside the record, it may be presented only by way of a petition for post-conviction relief...." *Id.* n. 4. This is precisely what appellant has done in the present case. Thus, it would be anomalous for us to hold, after directing appellant that the proper way to pursue his claim was through a petition for post-conviction relief, that post-conviction relief is now barred by res judicata.

108 Idaho 788, 792, 702 P.2d 826, 830 (1985).

We believe the same procedure should be followed in the present case. Darbin's claim of deprivation of his right to testify in his own behalf should be raised through a petition for post-conviction relief if he desires to pursue it. We therefore decline to decide that issue on the merits at this time, thus preserving the issue without prejudice and avoiding preclusion later on the basis of res judicata. *See* RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(b) (1982). If Darbin files a petition for post-conviction relief raising that issue, the issue should be determined under the guidelines of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

### III

██ Finally, Darbin argues that the district court abused its discretion in sentencing him to an indeterminate term not to exceed nineteen years. In addition to the grand theft charge, Darbin admitted being a persistent violator of the law. As a persistent violator, he could have been sentenced to life imprisonment. *See* I.C. § 19–2514. Therefore, the nineteen year indeterminate sentence imposed upon Darbin is clearly within the statutory limits for the offense as enhanced by his status as a persistent violator. Prior to sentencing, Darbin had three felony convictions and a number of misdemeanors over a ten-year period. At sentencing, the district court noted that Darbin had apparently chosen a life of crime. Having reviewed the full record and having considered the sentence review criteria set forth in *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982), we conclude that the district court did not abuse its sentencing discretion.

We affirm Darbin's conviction and sentence, but without prejudice to a subsequent petition for post-conviction relief raising the issue of whether Darbin was deprived of his right to testify in his own behalf.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

I concur in Parts I and III, together with the result reached in Part II, of the Court's opinion. I write separately on the troublesome question of whether an issue raised on direct appeal from a judgment of conviction can be raised again by an application for post-conviction relief.

This question is framed today by our declaration that an accused has a constitutional right to testify in his own behalf. The present record suggests, but does not conclusively show, that defense counsel abridged this right by waiving it without the accused's consent. Because the record is sufficient to raise—but not to decide—the waiver question, we refrain from disposing of it on the merits. Rather, we note that the issue could be addressed more appropriately in a post-conviction proceeding. The Court's opinion then states that by leaving the waiver question undecided, we have preserved the issue and have avoided the preclusive effect of res judicata in later proceedings. This statement is correct as far as it goes. Preclusion may be avoided by expressly authorizing a claim or issue to be raised in subsequent litigation. But I think the analysis should be taken one step further. Does res judicata apply at all?

Practitioners of criminal law must find it disquieting to be told that only the discretionary largesse of an appellate court stands between them and the bar of res judicata. After all, in *Kraft v. State,* 100 Idaho 671, 603 P.2d 1005 (1979), our Supreme Court was not so protective. The Court held that a claim made on appeal could not be made again, even upon a more fully developed record, in a post-conviction proceeding. The *Kraft* decision stands in contrast to *Carter v. State,* 108 Idaho 788, 702 P.2d 826 (1985). There, the Supreme Court allowed a post-conviction applicant to assert a claim previously rejected on appeal, explaining that a prior appellate opinion virtually had invited him to do so.

The *Kraft* and *Carter* decisions create uncertainty. Practitioners are abjured by Idaho Code § 19–4901(b) not to treat a post-conviction proceeding as "a substitute for ... an appeal from the sentence or conviction." A conscientious lawyer, mindful of this statute, may feel obliged to raise a claim or issue on appeal even though a better record could be developed in a post-conviction proceeding. If he does so, will his client be impaled by the thrust of *Kraft* or saved by the parry of *Carter*?

I think the time has come to reexamine the source of this disquietude—the assumption that post-conviction proceedings invariably are subject to the same rules of res judicata which govern other civil litigation. *Kraft* broadly and uncritically embraces this assumption. In my view, the *Kraft* opinion stands on shallow footings. In its discussion of res judicata, it adverts to an

earlier decision in *Larsen v. May*, 93 Idaho 602, 468 P.2d 866 (1970). *Larsen* was, indeed, a post-conviction case; but the Court there said nothing about res judicata. Rather, the Court simply said that if a post-conviction application framed no genuine issues of material fact, and raised nothing more than questions of law previously decided on appeal, a new hearing was unnecessary. Summary disposition was appropriate under I.C. § 19–4906. Nothing in *Larsen*, as I read it, was a harbinger of res judicata in *Kraft*.

The *Kraft* opinion not only invoked res judicata, it also enunciated the doctrine in its broadest form:

> [The] expectation that entire controversies will be presented and that all relevant material will be produced has long been the rule in Idaho: "We think the correct rule to be that in an action between the same parties upon the same claim or demand, the former adjudication concludes parties and privies not only as to every matter offered and received to sustain or defeat the claim *but also as to every matter which might or should have been litigated in the first suit.*" (Emphasis added.) *Joyce v. Murphy Land Etc. Co.*, 35 Idaho 549, 553, 208 P. 241, 242 (1922). *Ramseyer v. Ramseyer*, 98 Idaho 554, 556, 569 P.2d 358, 360 (1977).

100 Idaho at 673, 603 P.2d at 1007. By embracing *Joyce* and *Ramseyer*, *Kraft* announced that res judicata would attach to all matters that "might" be raised on appeal. This announcement wholly disregarded a previously recognized distinction between " 'mere trial errors' (which can be corrected only by direct appeal) and 'fundamental errors' (which may be raised even though they could have been raised on appeal)." *Smith v. State*, 94 Idaho 469, 475, 491 P.2d 733, 739 (1971).

When contrasted with *Smith*, the *Joyce* and *Ramseyer* cases were curious choices of precedent. Neither of them involved a post-conviction proceeding. Moreover, as we recently noted in *Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983), the

*Joyce-Ramseyer* version of res judicata is now known as the doctrine of claim preclusion. That doctrine is fully articulated in the RESTATEMENT (SECOND) OF JUDGMENTS (1982). The Second Restatement identifies several exceptions to the doctrine of claim preclusion. One of these exceptions, found at Second Restatement § 26(f), is invoked where the second litigation challenges "the apparent invalidity of a continuing restraint or condition having a vital relation to personal liberty...." Comment i to this section provides the following explanation:

> One instance [where claim preclusion does not apply] is a case in which the question at issue is the validity of a continuing restraint or condition having a vital relation to personal liberty. Although *civil actions attacking penal custody resulting from criminal convictions are beyond the scope of this Restatement,* such actions do illustrate the need to moderate conventional notions of finality when personal liberty is at stake.
>
> . . . . .
>
> It is not suggested that the concept of finality has no place in such cases, or that the court in every such case must allow splitting or relitigation without limit. What is indicated is the need for greater flexibility and, in some matters of this type, the need for special legislative treatment. [Emphasis added.]

Thus, post-conviction proceedings are outside the ambit of claim preclusion. They are creatures of, and are governed by, the Uniform Post-Conviction Procedure Act, I.C. §§ 19–4901 to –4911. This Act represents "special legislative treatment" as envisioned by the Second Restatement. The Act says nothing about res judicata or claim preclusion. It simply says, as noted earlier, that a post-conviction application is not a "substitute" for an appeal. I take this to mean, as our Supreme Court held in *Larsen v. May, supra,* that a post-conviction proceeding is no place for a convicted defendant to relitigate the same legal questions, in virtually the same factual context,

already presented in a direct appeal. This meaning is consistent with I.C. § 19–4901(a)(4), which authorizes an application to be filed when "there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice...." If a post-conviction application presents a substantial question previously raised on appeal, but in a materially different factual context, nothing in the Uniform Act forbids addressing the question on its merits.

It might be argued that even if res judicata in the form of claim preclusion does not apply to post-conviction proceedings, collateral estoppel (now known as issue preclusion) might be applicable. However, once again, such argument would find no textual support in the Uniform Act. Moreover, the Second Restatement recognizes several important exceptions to issue preclusion. Second Restatement § 28 provides in pertinent part as follows:

> Although an issue is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstances:
>
> ....
>
> (2) The issue is one of law and ... (b) a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws; or
>
> (3) A new determination of the issue is warranted by differences in the quality or extensiveness of the procedures followed in the two courts or by factors relating to the allocation of jurisdiction between them....

These exceptions may be invoked by post-conviction applications. If an application is grounded in facts beyond the record previously presented on appeal, and if the additional facts are those which could not, or customarily would not, be developed in a trial on criminal charges, there should be no issue preclusion.

The present case provides an illustration. The post-conviction application encouraged by today's decision presumably will specify the communications, if any, between Darbin and the attorney concerning his defense and his right to testify. These facts, although crucial to determining whether counsel acted unilaterally in waiving Darbin's right to testify, would have been peripheral to the issue of guilt or innocence pending before the trial court. Because the focus of the trial differed significantly from the prospective focus of a post-conviction proceeding, and because the accused's communications with his attorney could be probed far more extensively in a post-conviction proceeding than in the trial, I believe this case would fall within the foregoing exceptions to issue preclusion.

The upshot of this discussion is that res judicata, as broadly enunciated in *Kraft*, provides an unsatisfactory framework for defining the roles of direct appeals and post-conviction proceedings in achieving criminal justice. As the Second Restatement observes, conventional notions of finality must be moderated where personal liberty is at stake. In a free society, where restraints on liberty are carefully imposed, we should not bar challenges to the legality of confinement merely because they "might" have been presented on direct appeal or, if presented, were hampered by an undeveloped appellate record. When a post-conviction application makes a substantial showing that due process or another fundamental right has been abridged—and the application is supported by facts ill-suited for development in the original trial—it should be addressed on its merits. Res judicata does not apply. Neither can such an application be characterized as a mere "substitute" for the appeal.

In this kind of case, the thrust of the *Kraft* decision is misdirected. There is no need to parry the thrust by "inviting" a post-conviction application. The application simply is not precluded. When that conclusion is understood and accepted, the dis-

quietude over res judicata can be put to rest.