IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38501

| DONALD ROGER ROSSIGNOL, JR., | ) | |
|---|---|---|
| | ) | 2012 Opinion No. 11 |
| Petitioner-Appellant, | ) | |
| | ) | Filed: February 24, 2012 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| STATE OF IDAHO, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Appeal from the District Court of the Second Judicial District, State of Idaho, Latah County. Hon. John H. Bradbury, District Judge.

Order denying application for post-conviction relief, affirmed.

Sara B. Thomas, State Appellate Public Defender; Jason C. Pintler, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for respondent.

_____

MELANSON, Judge

Donald Roger Rossignol, Jr., appeals from the district court's order denying his application for post-conviction relief. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

In 2005, Rossignol was charged with three counts of lewd conduct with a minor under sixteen years of age and one count of sexual abuse of a child for inappropriate sexual contact with his daughter. Rossignol's daughter alleged that Rossignol had shown her pornography on his computer and then inappropriately touched her. A search of Rossignol's computer revealed pornographic images and movies and stories regarding incest. Rossignol's first trial ended in a mistrial when the jury could not reach a unanimous verdict. In 2007, Rossignol's second trial resulted in a guilty verdict for three counts of lewd conduct with a minor under sixteen years of age, I.C. § 18-1508; one count of sexual abuse of a child, I.C. § 18-1506; and being a persistent

1

violator, I.C. § 19-2514. This Court affirmed Rossignol's judgment of conviction in *State v. Rossignol*, 147 Idaho 818, 832, 215 P.2d 538, 552 (Ct. App. 2009).

In February 2010, Rossignol filed an application for post-conviction relief asserting that his trial counsel provided ineffective assistance. The state filed an answer in response asking that Rossignol's application be summarily dismissed. In July 2010, Rossignol filed an amended application again asserting that his trial counsel was ineffective. Specifically, Rossignol alleged that his trial counsel "refused to call [him] as a witness to testify on his own behalf in spite of [his] demand to be called as a witness." Rossignol also alleged that his trial counsel did not inform him that he "had the right to make the final decision on whether to testify on his own behalf, as opposed to the final decision being within the discretion of counsel." Finally, Rossignol alleged that his trial counsel failed to subpoena a doctor in a timely manner to testify at trial. The state filed an amended answer and motion for summary dismissal of Rossignol's amended application.

On November 1, 2010, Rossignol filed a motion for leave to file a second amended application. On November 2, the district court determined than an evidentiary hearing on the issues raised in the first amended application would be held. At the evidentiary hearing, Rossignol's post-conviction counsel notified the district court that, after he filed the motion for leave to file a second amended application raising some new issues, "those additional issues ended up being moot." Therefore, Rossignol's counsel explained that, "what we're pursuing today is the issues of ineffective assistance of counsel for failing to subpoena [a doctor] in a timely manner so that he could appear to testify and ineffective assistance of counsel for denying Mr. Rossignol his right to testify at the trial." The district court granted the motion to amend and allowed the state to file a second amended answer and motion for summary disposition of the second amended application. However, the district court did so only "in the interest of a comprehensive record" and informed the parties that "I'm going to allow him to file it. I'm going to allow you to file your response, and I'm going to consider them moot." The district court then denied the state's motion for summary dismissal of the first amended application. After the evidentiary hearing, the district court issued a memorandum decision and order denying Rossignol's application for post-conviction relief. Rossignol appeals.

2

## II.

## STANDARD OF REVIEW

In order to prevail in a post-conviction proceeding, the applicant must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

## III.

## ANALYSIS

Rossignol argues that the district court erred by denying his application for post-conviction relief. Specifically, Rossignol asserts that his trial counsel was deficient for failing to inform him that it was Rossignol's ultimate decision whether to testify and that, had he testified, there is a reasonable probability the result of the trial would have been different. Rossignol also asserts that he was deprived of his right to testify; he did not knowingly, intelligently, and voluntarily waive his right to testify; and the state did not prove beyond a reasonable doubt that the error was harmless. Finally, Rossignol argues that he was prejudiced by the failure of his trial counsel to timely subpoena a doctor to testify at trial.

### A. Right to Testify

In the order denying Rossignol's application, the district court stated that "even though Mr. Rossignol only made a claim of ineffective assistance of counsel, not a deprivation of a constitutional right, I must still consider his complaint that he was denied the opportunity to testify under a constitutional analysis." Accordingly, the district court analyzed Rossignol's claim that he was denied his right to testify as a deprivation of a constitutional right claim, not an ineffective assistance of counsel claim. The state asserts that Rossignol's claim should only be analyzed as an ineffective assistance of counsel claim. As explained below, this distinction is significant because it determines which party bears the burden of persuasion on appeal to show

3

whether the alleged deprivation was prejudicial or harmless. We first review relevant case precedent to determine the correct analysis to apply to Rossignol's claim.

In *State v. Darbin*, 109 Idaho 516, 708 P.2d 921 (Ct. App. 1985), after being found guilty of grand theft, Darbin contended, among other things on direct appeal, that he was denied effective assistance of counsel at trial because his counsel's conduct deprived him of the right to testify on his own behalf. In making this assertion, Darbin relied upon the following statements made by his trial counsel to the jury after the state rested its case in chief:

> Ladies and gentlemen of the jury, I have prepared an opening statement which I didn't make at the time the prosecutor made his. As I'm entitled to do, I'm entitled to reserve them. I have it all written out which goes through all of what the witnesses were going to say, the evidence we're going to admit, and at this time, I'm not going to make that opening statement, and I'm not going to put on a defense, and that's my decision, and I haven't even talked to [Darbin] about it.
> But I don't believe that the state has proven one necessary element of this case, that element being that [Darbin] knew the pickup was stolen. They may have proven to you--they probably have proven that the pickup was stolen, but they haven't proven any--. . . [Objection made.]

*Id.* at 520, 708 P.2d at 925.

This Court determined that, while Darbin characterized the issue as one of ineffective assistance of counsel, the inquiry should focus on the failure of Darbin to testify on his own behalf and not upon his counsel's decision regarding presentation of a defense. *Id.* We explained that this approach should be taken because, while counsel's decision of what witnesses to call will not be second guessed without evidence of inadequate preparation, ignorance of the relevant law, or other shortcomings capable of objective evaluation, the decision of whether a defendant should testify on his or her own behalf is personal to the defendant and cannot be waived by counsel as a matter of trial strategy. *Id.* at 520-21, 708 P.2d at 925-26. We further explained that "an apparent procedural difference arises, depending on whether the issue of the failure of a defendant to testify is viewed as a question of effective assistance of counsel or as a question of deprivation of a fundamental constitutional right to testify." *Id.* at 522, 708 P.2d at 927. If viewed as a question of effective assistance of counsel, pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984), the burden rests with the defendant both to identify the acts or conduct of counsel alleged to have been deficient and to show how such deficiency was prejudicial to the defense. *Darbin*, 109 Idaho at 522, 708 P.2d at 927. However, if the failure of

4

a defendant to testify is considered in the context of deprivation of a fundamental constitutional right, then pursuant to *Chapman v. California*, 386 U.S. 18 (1967), the defendant has the burden to show he or she was deprived of the right to testify, and the state must then convince the reviewing court beyond a reasonable doubt that the deprivation did not contribute to the defendant's conviction--that it was harmless error. *Darbin*, 109 Idaho at 522, 708 P.2d at 927. We concluded:

> [I]n the instant case Darbin's contention that error occurred because he was not allowed to testify in his own behalf should be considered under the *Chapman* approach . . . and not under the guise of effective assistance of counsel. The question is not whether Darbin was deprived of effective counsel, but rather was Darbin's constitutional right to testify infringed, when *no* witnesses were called by his counsel to testify?

*Id.* However, while we concluded that the issue was not truly one involving the effectiveness of counsel, we did not decide the issue because we determined that it should be pursued in post-conviction proceedings. *Id.* at 523, 708 P.2d at 928.

Shortly after *Darbin*, in *State v. Hoffman*, 116 Idaho 689, 778 P.2d 811 (Ct. App. 1989), a jury acquitted Hoffman of one robbery charge, but found him guilty of two other robbery charges. Hoffman moved for a new trial asserting that his attorney prevented him from testifying on his own behalf. After an evidentiary hearing, the district court concluded that Hoffman had waived his right to testify because Hoffman acquiesced in his attorney's insistence that he refrain from testifying. A judgment of conviction was entered and an appeal followed. On appeal, we began our analysis by noting that every criminal defendant has a fundamental right to testify on his or her own behalf and that the defendant is personally vested with the ultimate authority to decide whether or not to testify. *Id.* at 690, 778 P.2d at 812. We noted that the district court made no finding that Hoffman was aware of his ultimate right to decide whether he would testify, his attorney made no claim in the evidentiary hearing that Hoffman had been so advised, and it did not appear that the district court ever informed Hoffman he could testify if he so desired. *Id.* at 692, 778 P.2d at 814. We concluded that the record failed to support the district court's determination that Hoffman made a valid waiver of his right to testify, but continued our analysis pursuant to *Chapman* and determined that the infringement on Hoffman's right to testify was harmless error. *Hoffman,* 116 Idaho at 692, 778 P.2d at 814.

5

Seven years after *Hoffman*, in *Cootz v. State*, 129 Idaho 360, 924 P.2d 622 (Ct. App. 1996), Cootz appealed from the denial of post-conviction relief without an evidentiary hearing. Cootz argued that his felony convictions should be overturned because he was deprived of his constitutional right to testify on his own behalf and, drawing a parallel between his case and *Hoffman*, the district court should have held an evidentiary hearing on his post-conviction application to determine whether he voluntarily waived his right to testify at trial. Cootz also complained that his trial counsel should have advised him that his right to testify was absolute, had he been so advised he would have offered testimony that would have helped his defense, and not testifying in his own defense was the result of ineffective assistance of counsel. Cootz's affidavit indicated that he repeatedly told his counsel of his desire to testify on his own behalf, but he could not say that counsel told him he could not testify, nor could he say that his counsel told him the decision to testify was ultimately Cootz's. Cootz's trial counsel confirmed in an affidavit that Cootz had expressed a strong interest in testifying, but he could not recall whether he had advised Cootz that the ultimate decision to testify belonged to Cootz. Cootz's counsel also stated that Cootz did not testify as a result of counsel's advice.

This Court concluded that, from this record, summary dismissal was unjustified because "the district court could not ascertain that Cootz knew of his ultimate right to testify--the prerequisite to finding that Cootz had waived his right to testify." *Cootz*, 129 Idaho at 369, 924 P.2d at 631. This Court then applied the harmless error analysis pursuant to *Chapman* and determined that deprivation of Cootz's right to testify was harmless because, weighed against evidence of his guilt, Cootz's prospective testimony would not likely have changed the verdict. *Cootz*, 129 Idaho at 369-70, 924 P.2d at 631-32. We proceeded to note that to prevail on a claim of ineffective assistance of counsel, pursuant to *Strickland*, an applicant must demonstrate both that counsel's performance was deficient and that such deficiency prejudiced the applicant. *Cootz*, 129 Idaho at 370, 924 P.2d at 632. We concluded that there had been no factual showing that Cootz was prejudiced by the alleged failure of counsel to fully advise him of his right to testify and, therefore, affirmed the district court. *Id.*

Recently, in *Kuehl v. State*, 145 Idaho 607, 181 P.3d 533 (Ct. App. 2008), Kuehl appealed from dismissal of his post-conviction claim "that his trial counsel provided ineffective assistance by depriving him of his right to testify." *Id.* at 609, 181 P.3d at 535. According to Kuehl, on the day he was planning to testify, his attorneys took him into the judge's library for

6

consultation and promised Kuehl that if he would agree not to testify, counsel would inform the jury of all the issues they withheld from the trial. According to Kuehl, counsel did not fulfill their end of the agreement and, therefore, denied Kuehl's right to testify through a false promise. This Court applied the *Strickland* standard to Kuehl's claim. *Kuehl*, 145 Idaho at 610, 181 P.3d at 536. We concluded that, even assuming counsel made a false promise to Kuehl which fell below an objective standard of reasonableness, Kuehl had not shown prejudice as a result of the promise. *Id.* at 611, 181 P.3d at 537.

Shortly after *Kuehl,* in *DeRushé v. State*, 146 Idaho 599, 200 P.3d 1148 (2009), DeRushé, who was found guilty of murder in the second degree, filed an application for post-conviction relief alleging that his trial counsel deprived him of the right to testify on his own behalf. The district court summarily dismissed DeRushé's application. On appeal, the Idaho Supreme Court first noted that DeRushé's application and supporting affidavits stated that his attorney in the underlying criminal case had denied DeRushé's request to testify on his own behalf. The Court then disapproved of the district court's analysis in rejecting this claim pursuant to *Strickland*. *DeRushé*, 146 Idaho at 603, 200 P.3d at 1152. The Court concluded:

> The district court erred in analyzing DeRushé's claim as alleging ineffective assistance of counsel rather than as alleging denial of his constitutional right to testify on his own behalf. . . . Because DeRushé alleged admissible facts showing that his counsel denied him the right to testify in his own behalf, we vacate the dismissal of this claim, and we remand this case for further proceedings consistent with this opinion.

*Id.* at 603-04, 200 P.3d at 1152-53 (footnote omitted).

Just after *DeRushé*, in *Barcella v. State*, 148 Idaho 469, 224 P.3d 536 (Ct. App. 2009), the district court denied Barcella's post-conviction claim of ineffective assistance of counsel for failure to allow Barcella to testify at trial, finding that Barcella had not met his burden of showing prejudice. Barcella appealed, arguing in his initial brief that trial counsel provided ineffective assistance by prohibiting him from testifying. In a supplemental brief Barcella argued that, pursuant to *DeRushé*, his claim should be analyzed as a direct constitutional violation as opposed to a claim of ineffective assistance of counsel. This Court reasoned:

> *DeRushé*, however, does not stand for the proposition that a claim of ineffective assistance of counsel regarding the right to testify must also be analyzed as a direct constitutional violation. It certainly does not stand for the broad proposition that any time a claim of ineffective assistance of counsel is pled the district court must also address any potential underlying constitutional violation

independently. Rather, the Supreme Court took issue with the district court analyzing the claim "*as alleging* ineffective assistance of counsel rather than *as alleging* denial of his constitutional right to testify in his own behalf." *DeRushé*, 146 Idaho at 603, 200 P.3d at 1152 (emphasis added). This language clarifies the Supreme Court's concern that the district court had not analyzed the claim that was alleged in that case. . . .

. . . .

In this case, Barcella pled and argued a claim of ineffective assistance of counsel, and the district court ruled on that claim. No argument was ever presented to the district court regarding a direct constitutional violation of Barcella's right to testify. The district court was not required to frame the issues for the parties, nor was it required to develop the arguments to be presented. Barcella's argument that the district court was required, under *DeRushé*, to analyze the claim as a direct constitutional violation is . . . incorrect. *DeRushé's* holding was an instruction to the district court in that case, and it does not mandate that a claim of ineffective assistance of trial counsel for failure to allow the defendant to testify be analyzed as a direct constitutional violation.

*Barcella,* 148 Idaho at 476-477, 224 P.3d at 543-44. As such, this Court analyzed Barcella's claim--as pled and argued before the district court--as an ineffective assistance of counsel claim. We concluded that Barcella failed to demonstrate deficient performance regarding his trial counsel's advice not to testify and failed to demonstrate prejudice from any failure of Barcella to testify at trial. *Id.* at 477, 224 P.3d at 545.

Our review of *Darbin*, *Hoffman*, *Cootz*, *Kuehl*, *DeRushé*, and *Barcella*, leads to the following conclusions relevant to this case. *Darbin* indicates that the issue of the failure of a defendant to testify may be viewed in post-conviction proceedings either as a claim of ineffective assistance of counsel or as a claim of a deprivation of a constitutional right. With respect to *Hoffman*, we first note that Hoffman's claim that his attorney prevented him from testifying on his own behalf came to this Court on appeal from the denial of Hoffman's motion for a new trial. As such, this Court could not review Hoffman's claim as ineffective assistance of counsel because such a claim is not a ground for which a new trial may be granted. I.C. § 19-2406. However, of relevance here, *Hoffman* indicates that a defendant may not be found to have waived the right to testify unless the defendant was aware he or she had such right and also the ultimate authority to decide whether to testify, regardless of counsel's advice. *Cootz* demonstrates that the issue of the failure of a defendant to testify may be viewed in post-conviction proceedings both as a claim of ineffective assistance of counsel and as a claim of a deprivation of a constitutional right when both are presented to the district court. *Kuehl* indicates

8

that, when a post-conviction claim that trial counsel provided ineffective assistance by depriving a defendant of the right to testify is presented only as an ineffective assistance of counsel claim, the appropriate inquiry is that pursuant to *Strickland*. Similarly, *DeRushé* indicates that, if a defendant alleges that he or she was deprived by trial counsel of the right to testify on his or her own behalf, without also alleging ineffective assistance of counsel related to such claim, it should be analyzed as a claimed deprivation of a constitutional right. Finally, *Barcella* specifies that the appropriate inquiry depends upon on how the claim is pled and argued before the district court. *Barcella*, 148 Idaho 476-77, 224 P.3d at 543-44.

We now determine the correct analysis to apply to Rossignol's claim related to the deprivation of his right to testify at trial. As just described, to answer this question relevant case precedent requires an analysis of how Rossignol's claim was pled and argued before the district court.

As noted above, in Rossignol's amended application for post-conviction relief Rossignol asserted ineffective assistance counsel because his trial counsel "refused to call [him] as a witness to testify on his own behalf in spite of [his] demand to be called as a witness" and did not inform him that he "had the right to make the final decision on whether to testify on his own behalf, as opposed to the final decision being within the discretion of counsel." Further, prior to the beginning of the evidentiary hearing on the issue, Rossignol's counsel explained that "what we're pursuing today is . . . ineffective assistance of counsel for denying Mr. Rossignol his right to testify at the trial." To that point, only ineffective assistance of counsel was pled and argued. However, in denying the state's motion for summary dismissal of Rossignol's application prior to the evidentiary hearing, the district court considered Rossignol's claim as a deprivation of a constitutional right by stating:

> I am denying [the motion for summary dismissal]. And I'm denying it because I think there's a question of fact. I know that you stated it should be summarily dismissed because you say the prejudice wasn't alleged and it hasn't been shown. But the issue is in my judgment, and I know there may be some disagreement as to what the issue here is, and I'm going to let you go both as to the post-conviction remedy and/or the constitutional right to testify in your own behalf I view as a constitutional issue. I may be wrong on that so I'm going to allow evidence, and I'll sort that out after the evidence is in.

Thus, the district court first raised the constitutional question. Then, after post-conviction counsel presented closing argument at the evidentiary hearing that Rossignol's trial counsel was

9

ineffective for denying Rossignol his right to testify at trial, the following exchange occurred between post-conviction counsel and the district court:

> [COURT] [Counsel], do you think that it is whether or not a different result would occur, or do you think it's a constitutional issue of whether he's deprived of his right to testify, or both?
>
> [COUNSEL] I think it's both depending on the context. The case law has come down both. It's a constitutional issue, as well as ineffective--an ineffective assistance issue. And that's why I'm making this argument. I don't want to not make an argument and be told later on that I made the wrong one.
>
> [COURT] That's why I'm bringing it up.
>
> . . . .
>
> [COUNSEL] No, that's fine, Your Honor. I appreciate your clarification of that. But, again, if it is evaluated under the ineffective assistance of counsel's test I think prejudice has been shown. And, again, the record--I think it's unrebutted that . . . Mr. Rossignol wanted to testify. He insisted on testifying up to the last day of trial. He didn't know that he could overrule trial counsel's decision, and at the end of the day at the last day of trial he was not called as a witness.

In response, the following exchange took place between the state and the district court:

> [STATE] So, Judge, in case you do want to address this as a due process claim or the burden shifts to the State, first of all, again we say there was no error. There was no due process violation. He knew about his right to testify. He consulted with his attorneys. When he brought up that he really wanted and felt he needed to testify, they explained to him their position of why he didn't, and so forth. So our position is that on that and the [doctor] issue, too, that he hasn't shown any deficiency of counsel or due process violation. I'll also say that he hasn't alleged it, so I think it would be inappropriate for you to essentially change his cause of action after he's rested his case and decide this case on a due process issue that's not alleged. Those words aren't in there. The constitutional provisions that would be relevant aren't in there. And so, Judge, really that would be like taking a breach of contract claim--
>
> [COURT] Yeah, but let me tell you, [prosecutor], my experience has been that if it isn't raised now it will be raised in a subsequent petition so--
>
> [STATE] Sure.
>
> [COURT] So why not deal with it.
>
> [STATE] We're dealing with it. And I am, Judge, thank you. And I'm just trying to list all my arguments and preserve, again, my record that--because I do think that is important. But even that being said, again, we don't think he's shown a due process violation. . . . So the State's position is, Judge, that under either analysis ineffective assistance of counsel or due process that the defendant's claim should fail and that to

10

the degree Mr. Rossignol has a burden he has not met his burden. And to the degree the State does have the burden to show that any error was harmless, Judge, again, I would just refer you back to the trial and all the testimony, and the little amount of--I don't even know if I can call it exculpatory evidence. The little amount of evidence that Mr. Rossignol would have presented just simply doesn't get him there. So, Judge, we do ask that you find judgment in favor of the State.

Rossignol did not plead a constitutional deprivation. Pursuant to the case law analyzed above, ordinarily we would continue our review to the ineffective assistance of counsel claim as pled. However, under the circumstances of this case, because (in response to the district court's prompting) counsel for Rossignol tried the issue as both ineffective assistance and a constitutional violation and the district court accepted and analyzed the constitutional claim, we will review Rossignol's claim under both *Chapman* and *Strickland*.[1] Accordingly, we first analyze Rossignol's claim that he was deprived of his constitutional right to testify pursuant to *Chapman*. As noted above, under this analysis the defendant has the burden to show that he or she was deprived of the right to testify, and the state must then convince the reviewing court beyond a reasonable doubt that the deprivation did not contribute to the defendant's conviction--was harmless error. *Darbin*, 109 Idaho at 522, 708 P.2d at 927.

With respect to the first prong of the *Chapman* analysis, in the district court's order denying Rossignol's application, the district court explained that a criminal defendant may waive his or her right to testify at trial. The district court found that Rossignol did not meet his burden to prove the lack of a knowing waiver of such right. Specifically, the district court noted that Rossignol knew he had the right to testify and was personally informed by the district court during his arraignment that he had such right. The district court also stated:

Additionally, Mr. Rossignol is clearly not the type of person to give in when he believes somebody is obstructing his rights. During sentencing, Mr. Rossignol was not reticent in asserting that I was denying him of many of his rights. Additionally, during the course of the trial, Mr. Rossignol was constantly conferring with his counsel, apparently about trial strategy. In fact, even during the hearing on this petition, Mr. Rossignol interrupted his counsel in the middle of his counsel's cross-examination of [one of his trial counsel], apparently in order to ensure that his counsel would ask the right questions. Furthermore, during his

---

[1] We do not hold that a district court must analyze a constitutional or ineffective assistance claim which is not pled. We have determined to review both claims in this case only because both were actually tried to the district court at the evidentiary hearing.

own testimony at the hearing on this petition, Mr. Rossignol never stated that [his trial counsel] ever affirmatively told him that he could not testify. Rather, Mr. Rossignol simply characterized the relationship between him and his former counsel as one where he deferred to the decisions of the lawyer he was paying to make the right decisions for him.

Mr. Rossingol[] testified that he was never affirmatively prevented from testifying. Rather, every time he asked to testify, his lawyers advised against it, and he then deferred to their judgment. Mr. Rossignol does assert that he only deferred to his lawyers because they never told him that he was entitled to make the ultimate decision about whether or not he would testify. He fails to mention that I personally informed him that he had the right to testify. I simply do not believe that a man that has repeatedly shown himself to be assertive and intimately involved with his own trial strategy, even interrupting his lawyer while his lawyer cross-examines an opposing witness, would have not asserted his known right to testify if he wished to. All of these facts lead me to find that, although Mr. Rossignol did ask repeatedly to testify, he was each time thereafter convinced by his counsel that he should not testify. By thus voluntarily not testifying, Mr. Rossignol was not denied a constitutional right, but rather waived his right to testify.

We reiterate that, pursuant to *Hoffman*, a defendant may not be found to have waived his or her right to testify at trial unless the defendant was aware that he or she not only had such right, but also the ultimate right to decide whether to testify regardless of counsel's advice. In *Hoffman*, the district court made no finding that Hoffman was aware of his ultimate right to decide whether to testify, the attorney made no claim in the post-trial hearing that Hoffman had been advised of such right, and it did not appear that the district court ever informed Hoffman he could testify if he so desired. In *Cootz*, Cootz indicated that he repeatedly told his counsel of his desire to testify, but could not say that his counsel told him he could not testify or told him that the decision to testify was ultimately Cootz's. Also, Cootz's counsel could not recall whether he had advised Cootz that the ultimate decision belonged to Cootz. In both *Hoffman* and *Cootz*, this Court concluded that the record failed to support the district courts' determinations that the defendants made a valid waiver of the right to testify.

In this case, similar to *Hoffman* and *Cootz*, trial counsel did not claim that Rossignol had been informed of his ultimate right to testify over their advice not to do so. Further, similar to *Cootz*, while Rossignol told his counsel that he wanted to testify, he did not say that his counsel told him he could not testify. However, unlike in *Cootz*, Rossignol's claim was not summarily dismissed; he received a full evidentiary hearing. And, unlike in *Hoffman*, the district court informed Rossignol that he could testify if he so desired. The district court also found that

Rossignol did not prove that he was unaware of his ultimate right to decide whether to testify because the district court did not find Rossignol's assertion that he did not know of such right to be credible given that Rossignol had been informed of the right to testify by the district court and given Rossignol's assertive nature and intimate involvement with his own trial strategy. Again, the credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin,* 115 Idaho at 73, 764 P.2d at 440. We conclude that the record supports the district court's determination that Rossignol did not meet his burden to show he was deprived of the right to testify at trial.

However, even assuming Rossignol was deprived of the right to testify, pursuant to the second prong of the *Chapman* analysis, he would not be entitled to relief because such error was harmless. As the district court noted, the evidence against Rossignol was compelling and his forgery conviction, his perjury at a child protection hearing, and his flight from the jurisdiction before trial, which could have been disclosed during cross-examination, would have obviated any marginal benefit his testimony may have had.[2] Also, as the district court noted, Rossignol's presence on the stand would have exposed him to cross-examination about the thousands of pornographic images and the incest stories on his computer. Accordingly, we are convinced beyond a reasonable doubt that, even if Rossignol had testified, the jury would still have found Rossignol guilty of all counts. As such, even if Rossignol was deprived of his right to testify at trial, such error was harmless.

We next address Rossignol's claim that he was deprived of the right to testify as an ineffective assistance of counsel claim. Pursuant to *Strickland*, 466 U.S. at 687-88, to prevail on an ineffective assistance of counsel claim, the defendant must show that the attorney's performance was deficient and that the defendant was prejudiced by the deficiency. To establish a deficiency, the applicant has the burden of showing that the attorney's representation fell below an objective standard of reasonableness. *Aragon v. State*, 114 Idaho 758, 760, 760 P.2d 1174, 1176 (1988). To establish prejudice, the applicant must show a reasonable probability that, but for the attorney's deficient performance, the outcome of the trial would have been different. *Id.* at 761, 760 P.2d at 1177.

---

[2] At the evidentiary hearing, Rossignol alleged that had he been able to testify at trial, he would have told the jury that he loved his daughter and did not sexually abuse her.

13

We have already concluded that, even if Rossignol was deprived of his right to testify at trial, such error was harmless because we are convinced beyond a reasonable doubt that the alleged error did not contribute to Rossignol's conviction. Therefore, Rossignol cannot establish that there is a reasonable probability that, but for his counsel's alleged deficient performance, the outcome of the trial would have been different. Accordingly, even if Rossignol's counsel was deficient for failing to inform Rossignol that the ultimate decision whether to testify was his, Rossignol cannot show that such deficiency resulted in prejudice and, therefore, cannot prevail on his ineffective assistance of counsel claim.

**B.      Subpoena of Doctor**

We now address Rossignol's claim that his trial counsel was ineffective for failing to timely subpoena a doctor to testify at trial. Assuming the alleged deficiency, Rossignol did not present an affidavit from the doctor in support of his application for post-conviction relief confirming what the doctor would have testified to. As such, Rossignol's allegation as to how the doctor would have testified is merely speculative. Under the second prong of the *Strickland* test for ineffective assistance of counsel, a showing of prejudice requires more than mere speculation about what a witness may have said. *Raudebaugh v. State*, 135 Idaho 602, 605, 21 P.3d 924, 927 (2001); *Self v. State*, 145 Idaho 578, 580, 181 P.3d 504, 506 (Ct. App. 2007). Accordingly, Rossignol's claim fails under the second prong of *Strickland.*

## IV.

## CONCLUSION

Rossignol has not met his burden to show that he was deprived of the right to testify at trial. Even assuming Rossignol was deprived of such right, the error was harmless. Accordingly, even if Rossignol's counsel was deficient for failing to inform Rossignol that the ultimate decision whether to testify was his, Rossignol cannot show that such deficiency resulted in prejudice. Finally, even assuming that Rossignol's counsel was deficient for failing to timely subpoena a doctor to testify at trial, Rossignol has not shown that such deficiency resulted in prejudice. Therefore, we affirm the district court's order denying Rossignol's application for post-conviction relief. No costs or attorney fees are awarded on appeal.

Chief Judge GRATTON and Judge LANSING, **CONCUR.**