**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39520**

| | | |
|---|---|---|
| **GERALD ANGELO BARCELLA,** | ) | **2013 Unpublished Opinion No. 345** |
| | ) | |
| Petitioner-Appellant, | ) | **Filed: January 29, 2013** |
| | ) | |
| v. | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| **STATE OF IDAHO,** | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| Respondent. | ) | **BE CITED AS AUTHORITY** |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John P. Luster, District Judge.

Order denying petition for post-conviction relief, <u>affirmed</u>.

Nevin, Benjamin, McKay & Bartlett, LLP, Boise, for appellant. Dennis A. Benjamin argued.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent. Mark W. Olson argued.

_____

MELANSON, Judge

Gerald Angelo Barcella appeals from the district court's order denying his petition for post-conviction relief. For the reasons set forth below, we affirm.

**I.**

**FACTS AND PROCEDURE**

In December 1997, a jury found Barcella guilty of first degree murder. I.C. §§ 18-4001 and 18-4003. The facts giving rise to the charge against Barcella are set forth in this Court's opinion on Barcella's direct appeal from his judgment of conviction, *State v. Barcella*, 135 Idaho 191, 16 P.3d 288 (Ct. App. 2000), as follows:

> The state's evidence at trial set forth the following fact scenario: On the evening of April 2, 1995, Barcella told Kenneth Thrift-his drinking buddy for the evening, Virginia Smeltzer-the bartender at the Watering Hole bar in Coeur d'Alene, and Brad Bakie that he intended to kill Smith, the elderly manager of the Harmony House apartments where Barcella resided.

1

Returning to Barcella's room at the Harmony House apartments after the Watering Hole closed, Barcella and Thrift noisily entered the building and went into Barcella's one-room apartment, across the hall from Smith's room. There, they continued to drink accompanied by the noise of the radio and television. Smith, through the door, told Barcella to turn the volume down. Barcella begrudgingly complied. Some time later, while Thrift returned to his room next door to get some cigarettes and more beer, Barcella entered Smith's room and bludgeoned him in the head with a pulaski. When Thrift came back, about five minutes later, Barcella was at Smith's door, across the hall, wiping off the doorknob with his bandana.

Back in Barcella's room, Barcella told Thrift that he had killed Smith. The two continued drinking beer until about 4:30 a.m. and then left to get breakfast at Denny's Restaurant. From there, Barcella called his girlfriend Rikki Bobo. He told her to get over to Denny's and that he had killed Smith. Once she arrived, Barcella again told Bobo and Thrift that he killed Smith by striking him in the head three times with a pick ax.

After visiting with Barcella and Thrift at Denny's for nearly an hour, Bobo returned to Barcella's room at Harmony House. There, she noticed that Barcella's pulaski was not in his room. When Barcella arrived, Bobo, with Barcella's approval, wrote out a note addressed to Smith requesting a receipt for Barcella's rent payment. Barcella told her that the note was a good idea because it would make the police believe that Barcella thought Smith was still alive. Bobo slipped the note under Smith's door.

Later that afternoon, Peter Cooper, the owner of the Harmony House apartments, discovered Smith's body. Smith had several large head wounds and smaller wounds in his chest. A pulaski was found under a piece of carpet stuffed under Smith's bed. During the homicide investigation, officers discovered that Barcella, a convicted felon, possessed firearms in his room. While in jail on a charge of being a felon in possession of a firearm, Barcella was charged with first degree murder for the killing of Smith, I.C. §§ 18-4001-18-4003.

*Id.* at 194-95, 16 P.3d at 291-22 (footnote omitted). The jury returned a verdict of guilty of first degree murder, and Barcella received a unified life sentence, with a minimum period of confinement of thirty years. This Court affirmed Barcella's judgment of conviction and sentence.

Barcella, acting pro se, filed a petition alleging numerous grounds for post-conviction relief. The state answered and moved for summary dismissal. Thereafter, Barcella, with the aid of appointed counsel, filed an amended petition alleging four grounds for post-conviction relief. The state filed an answer and an amended motion for summary dismissal. A hearing was held on the state's amended motion. The district court granted the motion as to Barcella's claims of an unconstitutional judgment and sentence and prosecutorial misconduct, but ordered an evidentiary

2

hearing on Barcella's claims regarding ineffective assistance of trial and appellate counsel. The parties submitted briefing to the district court after the two-day evidentiary hearing, and the district court subsequently issued its decision denying Barcella's petition for post-conviction relief. Barcella appealed, and this Court affirmed the district court.

While the appeal on the first petition was pending, Barcella filed a successive petition which forms the basis of this appeal. The district court granted an evidentiary hearing on the issue of whether Barcella had been denied the right to testify. In summary, Barcella contended that he expressed his desire to testify at trial multiple times, but his attorney would not let him take the stand. Barcella stated that, if he would have testified at trial, he would have informed the jury that the killing occurred during a drug and alcohol induced blackout of which he had no memory. Barcella also would have explained that the threats he made were directed at other individuals, not Smith.

Barcella's trial attorneys also testified at the evidentiary hearing. Barcella's lead attorney testified that he knew the distinction between advising a client not to testify and preventing a client from testifying. The lead attorney further stated he could not recall ever preventing a client from testifying. The lead attorney made clear that, while he would often advise clients against testifying, it was the client's decision to make. Co-counsel for Barcella testified he did not recall any disputes regarding Barcella wanting to testify at trial. A criminal investigator, who was employed at the public defender's office at the time, testified that their office had a rule that it was the defendant's decision regarding whether to testify. The investigator also stated it was the general practice of the office to explain that rule to clients, both before and during trial. However, due to the amount of time that elapsed since trial, neither one of the attorneys, nor the investigator, was able to recall any specific conversation with Barcella. They simply could not recall if Barcella was informed of his absolute right to testify.

The district court denied Barcella's petition, finding that he waived his right to testify. The district court also found that, even if that right was violated, such error was harmless because the proffered testimony--that Barcella was impaired when he killed Smith--would have directly contradicted the defense raised at trial--that Barcella did not kill Smith. Barcella appeals.

## II.

## STANDARD OF REVIEW

In order to prevail in a post-conviction proceeding, the petitioner must prove the allegations by a preponderance of the evidence. I.C. § 19-4907; *Stuart v. State*, 118 Idaho 865, 869, 801 P.2d 1216, 1220 (1990). When reviewing a decision denying post-conviction relief after an evidentiary hearing, an appellate court will not disturb the lower court's factual findings unless they are clearly erroneous. I.R.C.P. 52(a); *Russell v. State*, 118 Idaho 65, 67, 794 P.2d 654, 656 (Ct. App. 1990). The credibility of the witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence are all matters solely within the province of the district court. *Larkin v. State*, 115 Idaho 72, 73, 764 P.2d 439, 440 (Ct. App. 1988). We exercise free review of the district court's application of the relevant law to the facts. *Nellsch v. State*, 122 Idaho 426, 434, 835 P.2d 661, 669 (Ct. App. 1992).

## III.

## ANALYSIS

Barcella argues that the district court's finding that Barcella waived the right to testify was clearly erroneous and that the denial of such right was not harmless. The state argues that Barcella failed to meet his burden to establish his right to testify was violated and that, even assuming such right was violated, the error was harmless.

### A. Waiver of the Right to Testify

A defendant in a criminal proceeding has the right to testify in his or her own behalf. *State v. Fields*, 127 Idaho 904, 912, 908 P.2d 1211, 1219 (1995). Although this right is not expressly set forth in the federal and state constitutions, it is necessarily implied from the Due Process Clauses of the Fifth and Fourteenth Amendments and from the Compulsory Process Clause of the Sixth Amendment. *State v. Hoffman*, 116 Idaho 689, 690, 778 P.2d 811, 812 (Ct. App. 1989). The defendant personally is vested with the ultimate authority to decide whether or not to testify. *Id.* Counsel may advise the defendant regarding the wisdom and propriety of testifying, however counsel must abide by the defendant's eventual decision. *Id.* A defendant may not be found to have waived the right to testify unless the defendant was aware he or she had such right and also the ultimate authority to decide whether to testify, regardless of counsel's advice. *Rossignol v. State*, 152 Idaho 700, 706, 274 P.3d 1, 7 (Ct. App. 2012).

4

In this case, the district court found that Barcella's trial attorneys had advised him of his right to testify and that his attorneys advised him against testifying because his proposed testimony would have been inconsistent with their defense at trial--that Barcella did not commit the killing. The district court also found that, after being so advised, Barcella either agreed or acquiesced and waived his right to testify. While the record is adequate to establish Barcella knew of his right to testify, it is insufficient with regard to whether he was aware that he had the ultimate authority to decide whether to testify regardless of counsel's advice. Because of the extensive time that elapsed since the trial in Barcella's case, neither of his trial attorneys, nor the public defender's investigator, was able to recall any specific conversations with Barcella at the time of trial. Because of this, the parties provided no testimony at the evidentiary hearing regarding whether Barcella was ever advised that the ultimate decision on whether to testify was his. Further, there is no colloquy on the record from trial where Barcella was advised that he possessed this right. Therefore, this Court is left with the contention of Barcella--that he did not know the ultimate right to testify was his and believed counsel would not let him testify. A defendant may not be found to have waived the right to testify where there is no evidence in the record that the defendant was aware he or she had the ultimate authority to decide this critical issue, regardless of counsel's advice. *Rossignol*, 152 Idaho at 706, 274 P.3d at 7. Thus, the record is inadequate to find that Barcella wavied his right to testify.

**B.     Harmless Error**

Even if Barcella was deprived of the right to testify, an infringement upon a defendant's right to testify may be treated as a harmless error if the appellate court is satisfied, beyond a reasonable doubt, that the error did not affect the jury's verdict. *Hoffman*, 116 Idaho at 692, 778 P.2d at 814. This harmless error analysis is done pursuant to *Chapman v. California*, 386 U.S. 18, 24 (1967).[1]

Barcella contends that, had he testified, he would have presented testimony regarding his level of intoxication that would have negated the requisite intent for first and second degree murder. Specifically, Barcella's proposed testimony on this subject is that he was also on Xanax at the time and that Smith was killed during a blackout period. The record demonstrates that numerous witnesses testified regarding Barcella's consumption of alcohol and level of

---

[1]     While the district court erred in applying *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), this does not affect our analysis of the issue.

intoxication. Thrift testified that, on the night of the murder, he was drinking with Barcella at the Watering Hole. Thrift further testified that this drinking continued back at Barcella's apartment, after closing time at the Watering Hole, and that they continued to drink into the early morning hours. Bobo testified that she was also drinking with Barcella at the Watering Hole. She testified that he was so drunk he had to be assisted out of the bar. Moreover, Bakie testified that, on the night of the murder, he was drinking with Barcella and Barcella was having "mixed drinks, vodka, [and] hard liquor." Thus, Barcella's proposed testimony regarding his level of intoxication adds nothing of significance to the evidence that was already before the jury.

Furthermore, the record contains substantial evidence supporting the jury's finding that the murder was premeditated. Specifically, earlier in the night, before Barcella's alleged blackout, Barcella told Thrift and Smeltzer he intended to kill Smith. Bakie, who had been drinking with Barcella both at the Watering Hole and at another bar, heard Barcella make the same threats regarding Smith approximately ten times. Additionally, Barcella revealed details of the killing to Bobo just hours afterwards. Barcella told Bobo he struck Smith in the head and that Smith "was flopping around like a fish." Additionally, Barcella revealed that he hit Smith in the head more than once and even disclosed his intent in doing so--to make sure that Smith was dead. Jailhouse witness George Lane corroborated this admission. Lane testified Barcella stated he struck Smith in the back of the head. These facts revealed by Barcella to multiple individuals are in direct contradiction to the position he now takes--that he has no memory whatsoever of the killing. Indeed, the level of detail Barcella described demonstrates that Barcella could accurately recall the events that occurred during the killing.

Other facts from trial also shed light on Barcella's mental state at the time surrounding Smith's death. Police found the pulaski used to kill Smith under Smith's bed, hidden beneath a piece of carpet. While Barcella now admits to putting it there, he claims that he was just trying to get it away from himself after coming out of his blackout in Smith's room. Despite this assertion, the most logical inference is that Barcella hid it there in an attempt to elude police. Further, on the night of the killing, Thrift observed Barcella outside of Smith's door, wiping down the handle with a bandana. Shortly thereafter, Barcella told Thrift that he killed Smith. That morning, when Bobo suggested writing a note requesting a rent receipt to Smith, Barcella acknowledged that it would be a good way to throw the police off, causing them to think Barcella believed Smith was still alive. In sum, Barcella's admissions and actions demonstrate

6

he was lucid and that the killing and actions surrounding it were conscious, calculated, and considered. Even with Barcella's proposed testimony, we hold that, beyond a reasonable doubt, the jury still would have found him guilty of first degree murder.

## IV.

## CONCLUSION

Although the record is inadequate to demonstrate that Barcella waived his right to testify, we are satisfied beyond a reasonable doubt that the error did not affect the jury's verdict. Therefore, the district court's order denying Barcella's petition for post-conviction relief is affirmed. No costs or attorney fees are awarded on appeal.

Chief Judge GUTIERREZ and Judge GRATTON, **CONCUR.**